(Decided June 25th, 1873.)

KATE P. DUNGAN, Admx. of ELIZABETH W. DUNGAN, *vs.* THE MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEW JERSEY.

*When Trover cannot be maintained—Distinction between a Pledge and a Mortgage of goods or choses in action.*

On the 17th of June, 1861, D. effected an insurance on his life for $5000, payable on his death to his wife or her *assigns*. The annual premium of $245, was to be paid on the 17th of June, in each and every year, during the continuance of the policy. And it was stipulated that in case of failure to pay the premiums on or before the several days limited for their payment, the Insurance Company should not be liable for the payment of the sum insured, or any part thereof, and the policy should cease and determine, and in such case, all previous payments made thereon, and all profits should be forfeited to the company; and in case of an assignment of the policy, written notice was to be given to the Insurance Company, and their assent thereto obtained. On the 17th of June, 1862, D. and wife executed under seal, the following assignment of the policy: "For value received, we do hereby assign, &c., to W., his heirs, or assigns, the above named policy of insurance, and all sum or sums of money, interest, benefit and advantage whatsoever, now due, or hereafter to arise, or to be had, or made by virtue

thereof, to have and to hold unto the said W., his heirs, or assigns." Upon the execution of this assignment, the policy was delivered to W., and at the same time, he gave to the assignors the following receipt: "Received of D. and wife, an assignment of Policy No. 9,238, &c., as security for the prompt payment at maturity, of their note at four months from date, amounting to $220.25; said assignment to be *null and void,* upon the payment of said note at its maturity—*otherwise, to continue* for sole use of W." The note referred to in this receipt, was dated 17th June, 1862, and payable to the order of W., it was signed with the name of the wife, *per* D. the husband, and his name was signed upon the back of it. This note was not paid at maturity, nor at any time thereafter. Notice in writing of the assignment, though not of the receipt, was given to the Company by W., on the 17th of December, 1862, and on the following day, the Company returned to W., their written assent to it, subject to the conditions of the policy. On the 28th of November, 1865, W. surrendered the policy to the Company, and received therefor $1248.51, he having paid the premiums thereon up to that date. On the 28th of June, 1866, D. and wife brought an action of *trover* against the Insurance Company, to recover damages for the conversion of the policy. HELD :

That the assignment of the policy, together with the receipt therefor, formed one contract, and constituted a sale or mortgage, rather than a pledge as collateral security for the note, and consequently, the plaintiffs had not at the time of the alleged conversion and suit brought, the interest and title of bailors, to enable them to maintain *trover.*

The general distinction between a pledge and a mortgage of goods, or *choses in action* is, that in a mortgage, the title is conveyed with a condition of defeasance, that is to say, a condition rendering the conveyance void, on the payment of a certain sum of money, on or before a day agreed upon; while in a pledge, the goods bailed are deposited as a collateral security, and only a special property is transferred to the bailee, the general title in the meanwhile, remaining with the bailor. The intention of the parties, and the real effect of their agreement, are to be considered and respected in its enforcement: the *purport* and *substance* of the contract, determines whether it shall be considered a mortgage or a pledge.

APPEAL from the Superior Court of Baltimore City.

At the trial below, after the plaintiff's case had been closed, the Court (DOBBIN, J.,) in the exercise of its discretion under the 33d Rule for the conduct of business, &c., requested the defendant to submit a prayer involv-

ing the plaintiff's right to recover, and thereupon the defendant prayed the Court to instruct the jury: "That upon the evidence offered by the plaintiff, if believed by the jury, the plaintiff had not, at the time of the institution of this suit, the legal right to the policy of insurance, or the right to its possession, and therefore cannot recover." This prayer the Court granted. The plaintiff offered five prayers which the Court refused to grant: their insertion is not deemed necessary. The jury rendered a verdict for the defendant and judgment was entered accordingly. The plaintiff appealed.

The facts of the case are sufficiently stated in the opinion of this Court.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, MILLER and ALVEY, J.

*Arthur Geo. Brown* and *Geo. Wm. Brown,* for the appellant.

The assignment and receipt constitute a pledge. The assignment of the policy and the receipt constitute one contract, and must be construed together. The assignment is in the ordinary form. It is certainly not a mortgage.

Nor is the receipt a mortgage either in substance or in form. It is simply a *pledge,* for it states that the *assignment of the policy* was given as *security* for the payment of the note at maturity. It was intended to explain the true meaning of the assignment. The expressions, *security* and *collateral security,* mean the same thing, and are made use of in pledges, but not in mortgages. The expression shows that the *general property* in the thing pledged remains in the pledgor, and that the pledgee only *holds* it as security for the debt, while in a mortgage the *title* to the thing is absolutely granted with a *condi-*

*tion of defeasance.* 2 *Stephens' Comms.*, 80; 2 *Bell's Comms.*, 19, 20.

There is no substantial difference between the receipt in this case and the receipts in the cases of *Md. Fire Ins. Co. vs. Dalrymple*, 25 *Md.*, 258; *Balt. Marine Ins. Co. vs. Dalrymple*, 25 *Md.*, 300; *Bryson vs. Rayner*, 25 *Md.*, 424.

In these cases the stock was absolutely assigned on the books of the companies, but the receipts were held to make the transactions pledges and not mortgages. The fact that these receipts contained an express power of sale on default of payment, did not make them pledges, rather than mortgages, because such a power of sale is quite as common and legal in a mortgage as in a pledge. *Code of Pub. Genl. Laws, p.* 140, 143, 144, *Act of* 1856, *ch.* 154, *sec.* 142; *Broom's Common Law,* (4th *Edition,*) 815; *Bateman on Commer. Law, secs.* 673, 674, 681, 688; *Edwards on Bailments,* 201, 252; *Story on Bailments,* (5th *Ed.,*) *secs.* 7, 345, 346; 2 *Kent's Com.,* 581, *et seq.*; *McAnelly vs. Chapman,* 18 *Texas,* ·198; *Lucketts vs. Townsend,* 3 *Texas,* 119; *Moore vs. Eldred,* 42 *Vermont,* 13; *Heyland vs. Badger,* 35 *Cal.,* 404; *Wright vs. Ross,* 36 *Cal.,* 414; *Pigot vs. Cubley,* 109 *E. C. L.,* 701; *Taggart vs. Packard,* 39 *Vt.,* 628; *Spaulding vs. Barnes,* 4*Grey,* 330; *Walker vs. Staples,* 5 *Allen,* 34; *President, &c., vs. Minot,* 4 *Met.,* 325.

Notice of assignment was not given by Webb to the company, and its assent thereto obtained until six months after the assignment, and the notice was evidently withheld by Webb until he was about to apply to the company for permission to use the policy as a security to the company for a loan to himself. Such a notice was not in reasonable time, and was too late. The policy requires notice of assignment to be given and the assent thereto of the company.

Such a rule can be enforced by the company against the insurer, and it ought to be strictly enforced as against

the company itself, and its agents. The assignment did not, therefore, pass the legal title to Webb, and he could not pass it to the defendant. *N. Y. Life Ins. Co. vs. Flack*, 3 *Md.*, 341; *Stevens vs. Warren*, 101 *Mass.*, 564; *Badger vs. Ins. Co.*, 103 *Mass.*, 244; 2 *Pars. on Cont.*, (*5th Ed.*,) 481.

The notice of assignment was not sufficient, because it did not disclose the real assignment between the Dungans and Webb. The object of the notice is to give information to the company of the true nature of the assignment, and of the parties interested, but this notice did not give information of either. For this reason also the assignment did not pass the legal title to Webb, and he could not pass it to the defendant.

*Thomas W. Hall* and *I. Nevett Steele*, for the appellee.

The assignment of the policy to Webb, June 17th, 1862, was regular and legal in form, and absolute in terms. By the receipt of the same date given by Webb, a condition of defeasance was annexed to the assignment, upon breach of which and after default made, the assignment became absolute in fact. The two papers taken together constitute a *mortgage*, in form and in substance, in language and in legal effect—as distinguishable from a *bailment of pledge*, or *deposit* by way of collateral security. The objection that all the details of the transaction were not communicated to the company, for its approval, cannot affect the validity of the assignment. The reasons which require notice of assignment to be given and the assent of the insurers obtained, in the case of *fire* policies, have no application to *life* policies. The condition in the policy requiring such notice and assent, is inserted by the company for its own protection, the breach of which it may waive, and which cannot affect the validity of the transaction *inter partes*. But, in this case, notice *was* given to the company of the assignment and its assent

thereto obtained. No notice of the condition of defeasance was given, because none was necessary or required. *N. Y. Life Insurance Co. vs. Flack*, 3 *Md.*, 353; *Mutual Protection Ins. Co. vs. Hamilton*, 5 *Sneed*, 273, 279; *Merrill vs. N. E. Ins. Co.*, 103 *Mass.* 252; *Bliss on Life Insurance*, sec. 330; *Cortelyon vs. Lansing*, 2 *Caine's Cases*, 200; *Parshall vs. Eggart*, 52 *Barbour*, 371.

A policy of life insurance is assignable either absolutely or by way of mortgage to secure a debt. Such policies are *choses in action*, governed by the same principle which are applicable to other agreements involving pecuniary obligations. In this State, the assignment of a policy of insurance has been held to be within the Act of 1829, ch. 51. *N. Y. Life Ins. Co. vs. Flack*, 3 *Md.*, 354; *Emerick vs. Coakley*, 35 *Md.*, 191; *Bliss on Life Ins.*, sec. 325.

A chattel mortgage (and the same is true of a mortgage of a *chose in action*, such as a policy of insurance) vests the legal title in the mortgagee, subject to be revested in the mortgagor, upon performance of the condition, and in case of default made, or breach of the condition, the title becomes absolute at law in the mortgagee. The action of *trover* depends upon the legal title, general or special to support it, and the mortgagor as against the mortgagee has no *legal* title whatever. *Story on Bailments*, sec. 287; *Story's Eq. Jurisp.*, sec. 1030; *Haskins vs. Patterson*, 1 *Edm. Sel. Ca.*, 122; *Langdon vs. Buel*, 9 *Wend.*, 80; *Patchin vs. Pierce*, 12 *Wend.*, 61; *Woodworth vs. Morris*, 56 *Barb.*, 103; *Burdick vs. McVanner*, 2 *Denio*, 170; *Brown vs. Bement*, 8 *Johns.*, 75; *Wood vs. Dudley*, 8 *Verm.*, 434; *Winchester vs. Ball*, 54 *Maine*, 558; *Holmes vs. Bell*, 3 *Cush.*, 322; *Heyland vs. Badger*, 35 *Calif.*, 404.

That the plaintiff *in trover* must recover upon the strength of his own *legal title*, and that to maintain *trover*, there must be in the plaintiff a concurrence both of the right of property, general or special, and of the right to

immediate and actual ·possession, has been uniformly recognized in Maryland and is common law.   *Mayor · and C. C. of Baltimore vs. Norman,* 4 *Md.,* 358; *Stewart vs. Spedden,* 5 *Md.,* 449; *Bryson vs. Raynor,* 25 *Md.,* 432; *Owen vs. Knight,* 4 *Bingh. N. C.,* 56; *Gordon vs Harper,* 7 *Term R.,* 9; *Winner vs. Penniman,* 35 *Md.,* 165.

Even if the plain meaning and purport of the assignment and receipt of June 17, 1862, which constitute a mortgage, if any form of apt words can possibly have that effect, could be ignored, and the transaction treated as a *bailment of pledge,* the appellant's right to maintain *trover* would not thereby be established.   To enable a *pledgor,* out of possession, to maintain *trover,* two things are necessary—viz:

1st. Wrongful conversion by the defendant.   2nd. Tender of the amount due by the plaintiff.   In this case, the appellee's possession having commenced and continued *under contract,* there could be no wrongful conversion without previous demand and refusal.   There could be no lawful demand without tender, and there is no evidence of tender at any time, and so far from refusal, the record shows a proffer by the appellee, to revive the surrendered policy not only upon terms which were strictly equitable but highly advantageous to the appellant, and which the appellant failed to accept.   *Stewart vs. Spedden,* 5 *Md.,* 449; *Donald vs. Suckling,* 1 *Q. B. (L. R.),* 610, 619; *Halliday vs. Holgate,* 3 *Exch.,* 302, *(L. R.); Tyler on Pawns,* 574; *Bryson vs. Rayner,* 25 *Md.,* 433; *Lucus vs. Latour,* 6 *H. & J,* 100.

MILLER, J., delivered the opinion of the Court.

This is an action of *trover* to recover damages for the conversion of a life insurance policy for $5000, issued by the appellee, (the defendant below) upon the life of Francis D. Dungan, payable on his death to his wife Elizabeth W. Dungan.   The suit was brought on the

28th of June, 1866, by Dungan and wife, both of whom died during its pendency, and it was revived on the 15th of January, 1872, in the name of the wife's administratrix.   At the trial, after the evidence on the part of the plaintiff was closed, the Court instructed the jury that upon that evidence if believed by them, the plaintiffs had not at the time of the institution of this suit, the legal title to the policy of insurance and therefore cannot recover in *trover*.   Unless there be material error in this instruction the judgment must be affirmed.   The law which it embodies is not disputed.   To sustain *trover*, the plaintiff must show a legal title; he must have property, general or special, and actual possession or the right to immediate possession at the time of the conversion.   The conceded facts upon which we presume this instruction was based, are substantially as follows :

The policy (No. 9238,) was issued on the 17th of June, 1861, and by its terms it insures the life of Dungan to the amount of $5000, in consideration of an annual premium of $245 to be paid on the 17th day of June, in every year during its continuance ; the amount insured is to be paid to his wife, Elizabeth W. Dungan, *or assigns*, within ninety days after due notice and proof of his death; in case of failure to pay the premiums on or before the several days limited for their payment, the company shall not be liable for the payment of the sum insured or any part thereof and the policy shall cease and determine, and in such case all previous payments made thereon, and all profits shall be forfeited to the Company ; and if assigned, written notice shall be given to the Company and their assent thereto obtained.   On the 17th of June, 1862, Dungan and wife executed the following assignment of this policy to William P. Webb :

"Assignment of policy No. 9238.    In the Mutual Benefit Life Insurance Company—Life of Francis D. Dungan."

"For value received, we do hereby assign, transfer and set over unto Wm. P. Webb, his heirs or assigns the above named policy of insurance, and all sum or sums of money, interest, benefit and advantage whatsoever, now due or hereafter to arise or to be had, or made by virtue thereof, to have and to hold unto the said Wm. P. Webb, his heirs or assigns. In witness whereof, we have hereunto set our hands and seals the seventeenth day of June, one thousand eight hundred and sixty-two.

E. W. Dungan,    [seal.]<br>
Francis D. Dungan, [seal.]"

"Signed, sealed and delivered in the presence of

John W. Mortimer."

Upon the execution of this assignment the policy was delivered to Webb, and at the same time he gave to the assignors the following receipt:

"Baltimore, June 17th 1862.

"Received of Mrs. E. W. Dungan and Mr. F. D. Dungan, an assignment of policy No. 9238, in the Mutual Benefit Life Insurance Company of N. J., Life of F. D. Dungan—as security for the prompt payment at maturity of their note at four months from date, amounting to two hundred and twenty $\frac{25}{100}$ dollars; said assignment to be *null and void* upon the payment of said note at its maturity; *otherwise to continue* for sole use of W. P. Webb.

W. P. Webb."

The note referred to in this receipt is a note dated the 17th of June, 1862 for $220.25, payable four months after date, to the order of Webb, and signed E. W. Dungan, *per* Francis D. Dungan, and also with the name of the latter upon the back of it. This note was not paid at maturity nor has it ever been paid. Notice in writing of this

assignment, though not of the receipt, was given to the Company by Webb, on the 17th of December, 1862, and on the following day the Company returned to him their written assent to it, subject to the conditions of the policy. On the 28th of November, 1865, Webb surrendered the policy to the Company and received therefor the sum of $1248 51, he having paid the premiums thereon up to that date.

On these admitted facts it is insisted on the part of the appellee that this assignment and accompanying receipt constitute either a *conditional sale and transfer* of the policy, which became absolute and irrevocable, both at law and in equity, upon failure to pay the note at maturity, or a *mortgage* of it, and in either event there was no legal title in the plaintiffs to support *trover*. On the other hand the appellant's counsel contend that the transaction was merely a *pledge* or *deposit* of the policy as collateral security for the payment of the note, and hence under the law of bailments, title "to maintain trover," remained in the bailors. The legal result in each case cannot be subject of dispute; in the one case the legal title passes to the vendee or mortgagee, and in the other the general title remains in the pledgors. The difference between a pledge and a mortgage of goods or *choses in action* is said to be marked and easily understood, but it is sometimes in practice very difficult to determine whether a particular contract is the one or the other. The general distinction is that in a mortgage the title is conveyed with a condition of defeasance, that is to say, a condition rendering the conveyance void on the payment of a certain sum of money on or before a day agreed upon; while in a pledge the goods bailed are deposited as a collateral security, and only a special property is transferred to the bailee, the general title in the meanwhile, remaining with the bailor. The difference has also been well stated thus: "A mortgage is a pledge and more; for it is an absolute

pledge to become an absolute interest if not redeemed at a certain time. A pledge is a deposit of personal effects, not to be taken back but on payment of a certain sum, by express stipulation or the course of trade, to be a lien upon them.'' With respect to goods and chattels it is in most cases very easy to apply this distinction, but with respect to *choses in action* · which cannot be otherwise delivered, the fact that title passes does not necessarily create a mortgage. To constitute a mortgage the title must be conveyed, but it is not in all cases a mortgage because the title is conveyed. Thus a transfer of stock may be absolute, but still if its object and character are qualified and explained by a contemporaneous paper which forms a part of the contract, and declares it to be a deposit of the stock as collateral security for the payment of a loan, *and there is nothing in the contract to work a forfeiture of the right to redeem or otherwise defeat it, except by a lawful sale under the power expressly conferred in the agreement,* the transaction will be regarded as a pledge. It is also well said that here, as in other cases, the intention of the parties and real effect of their agreement are to be considered and respected in its enforcement: the *purport and substance of the contract* determines whether it shall be considered a mortgage or a pledge. It is thus, in substance, that the distinctions between these two forms of contract are stated by the elementary writers of the highest authority, making their deductions from adjudged cases. 2 *Story's Eq* , sec. 1030 ; *Story on Bailments,* secs. 287, 345, 346 ; 2 *Kent's Com.,* 581 ; *Edwards on Bailments,* 201, 251, 252, 253 ; 1 *Parsons on Contracts,* 113, 115. The same result is stated in the more recent work of *Bateman on Commercial Law,* secs. 674, 681. The still more recent decisions of the Courts, many of which have been cited in argument, throw no new light upon the subject and furnish no better rules

or guides for determining whether a particular transaction be the one or the other of these contracts.

Applying the tests thus laid down to this case, and reading, as we must, the assignment and receipt together as forming one contract, we are clearly of opinion that if it be possible to effect a conditional sale or mortgage, as contradistinguished from a pledge of a running life insurance policy, it has been here effected. The assignment is under seal, and in the most formal terms conveys to Webb, his heirs and assigns, the policy itself and all interest and advantage existing or hereafter to arise under it. Language affords no more apt words to make it absolute and complete. Then comes a defeasance clause in the most technical form : "said *assignment* to be *null and void* upon payment of the said note at maturity, *otherwise* to *continue* for the *sole use* of" the assignee. There is no declaration that the policy was deposited as *collateral security* for payment of the note and there is expressly conferred no power of sale in case of default with or without notice. The purport and substance of the contract and the intention of the parties as disclosed by the language they have made use of to express it, clearly indicates a sale or mortgage rather than a pledge. If the subject matter of the contract be considered, it leads to the same conclusion. Continuing life policies, if they have any, have not the same easily ascertained market value as personal chattels or shares of stock in banks or other corporations. They are not ordinary articles of sale in market-overt or at the stock boards. The power of sale incident to a pledge could not be readily exercised, if at all, in case of default, and hence no one would be inclined to accept them as securities for loans and advances with no more interest or title in, or control over them than that which the law of bailments confers. The assignee of such an instrument must, in order to keep it alive as a contract against the company,

pay the accruing premiums and run the risk of other conditions upon which it may become null and void. The company may stand upon their contract and refuse assent to an assignment or to pay anything for its surrender, relying upon the expectation or contingency in a particular case, of greater profits resulting from the duration of the life insured and annual premiums payable thereon. Nor do we discover any thing in the acts, declarations or conduct of the parties anterior to or at the time this transaction took place, or subsequently, (even if such subsequent acts or conduct could be considered in construing the contract,) which could induce us to determine they considered it as a mere pledge of the policy as collateral security for the note. Notice to the company of the terms of the *receipt* was not necessary, and notice of the *assignment* was given and assented to by the company in due time. Even if a failure in that respect could affect the validity of the transaction as between the assignors and assignee.

It follows from what has been said that upon these conceded facts the plaintiffs had not, at the time of the alleged conversion and suit brought, the interest and title of bailors so as to enable them to maintain *trover*. We are also of opinion there is nothing in the fact that Webb, the assignee, was at the time of the assignment and subsequently, the acting agent of the company; nor in any of the other evidence in the record, or inferences legitimately deducible therefrom, that can avail to support this action. What effect they would have if the suit were founded upon the policy itself, or in any other form at law or in equity, is a question upon which we refrain from expressing any opinion. For the purposes of this case it suffices to determine there is no ground upon which *trover* can be supported.

These views render the ruling upon the admissibility of evidence, to which an exception was taken, entirely

immaterial; for had the excluded evidence been admitted it would in no wise have affected the determination of the main and vital question in the case.

*Judgment affirmed.*

(Decided 25th June, 1873.)

STEWART, J., dissented.