# WILLIAM EDWARD LAWRENCE *v.* ROGER ARNOLD GRAHAM

[No. 988, September Term, 1974.]

*Decided December 30, 1975.*

423

The cause was submitted on briefs to POWERS, LOWE and MASON, JJ.

Submitted by *Donna C. Aldridge* for appellant — cross-appellee.

Submitted by *James K. Foley* for appellee — cross-appellant.

MASON, J., delivered the opinion of the Court.

The appellant, William E. Lawrence, was sued by the appellee, Roger A. Graham, in an action in trover for the conversion of a Cadillac automobile. The trial court directed a verdict for Graham on the issue of conversion and the jury awarded him $3,637.00 in compensatory damages and $1,500.00 in punitive damages. Lawrence filed an appeal from these judgments and Graham filed a cross-appeal.

According to the evidence adduced at trial, Lawrence purchased a two story building from Graham for the price of $29,000.00. As part of the purchase price, Lawrence transferred title and possession of his 1969 Cadillac automobile, valued at $5,000.00 to Graham and received, in return, a deed to the property on June 21, 1971. In November of 1971, Lawrence who had handled most, if not all, of the paperwork incident to this transaction, prepared and submitted to Graham a settlement sheet, which indicated Graham had been overpaid. Graham did not dispute the overpayment, but was unable to pay it. At the suggestion of Lawrence, Graham gave Lawrence three post-dated checks in the amounts of $441.00, $376.00, and $386.00, as full

payment. These checks were to be cashed in December, January and February, respectively. It was the intention of Graham to pay Lawrence within ninety days, but if he could not get the money, he planned to sell the Cadillac and pay the debt from the proceeds of the sale. In the latter part of December, Lawrence took the December check to the bank and was notified that there were insufficient funds. He contacted Graham, who told him that he was going to sell the car. Lawrence advised Graham not to sell the car, because he still held title to it. Graham later sold the car to Sullivan during the first week in January, 1972 for $4,500.00, $4,000.00 in check and $500.00 in cash. Lawrence found out that Sullivan had the car and, after contacting the State's Attorney and various police officials, he removed the car from the residence of Sullivan. Graham was then contacted by Sullivan who canceled the sale. As a result, Graham repaid Sullivan $500.00 and did not attempt to cash the $4,000.00 check. When Graham called Lawrence about the car, he denied having it, and refused to return it.

Lawrence, in seeking a reversal of the judgments below, contends:

I. That the trial court committed reversible error in denying his motion for a directed verdict on the question of Graham's ownership of the Cadillac automobile.

II. That the trial court erred in submitting the question of punitive damages to the jury.

III. That the trial court erred in not allowing him to testify as to his conversation with Graham regarding return of the automobile.

I

The first prong of Lawrence's two pronged argument is that Graham could not maintain an action in trover for the alleged conversion of the Cadillac automobile, because the title to the car was not in Graham's name. The evidence reveals that after Graham received the car from Lawrence, as part of the purchase price for his building, Graham never had the title changed to his name. Graham claimed the title

was not changed because Lawrence indicated he was going to buy the car back and asked him not to change it. Whatever reason Graham may have had for not changing the title to his name, his right of ownership in the car was not defeated because of this fact.

"... title registration merely raises a presumption of ownership which, not being conclusive, is rebuttable by evidence to the contrary if such is produced." *Metropolitan Auto Sales v. Koneski*, 252 Md. 145, 155, 249 A. 2d 141, 147 (1969); *Liberty Mut. Ins. Co. v. American Auto. Ins. Co.*, 220 Md. 497, 500, 154 A. 2d 826, 827-8 (1959).

See the Annotated Code of Maryland, Commercial Law Article § 2-401 (2), which states:

"Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes his performance with reference to the physical delivery of the goods ... even though a document of title is to be delivered at a different time or place; ..."

It is evident that ownership of the vehicle passed from Lawrence to Graham as part of the consideration for the purchase of the building. Therefore, the fact that Graham did not register the title in his name did not divest him of ownership.

The second prong of Lawrence's argument is that Graham divested himself of ownership and the right to bring an action in trover when he sold the automobile to Sullivan. *Poe's Pleading and Practice* states:

"In order to maintain trover, the plaintiff as a general rule, must show not only that he had at the time of conversion a property in the chattel, either general or special, but also that at the time of the conversion he had the actual possession, or the right to immediate possession." Vol. 1, § 207 (6th ed. 1970).

426

See *Dungan v. Mutual Benefit Life Ins. Co.*, 38 Md. 242, 249 (1873); *Baltimore v. Norman*, 4 Md. 352, 358-359 (1853).

The evidence discloses that Graham sold the automobile to Sullivan for $4,500.00, $500.00 in cash and $4,000.00 in a personal check. The sale occurred on the weekend, and before Graham had an opportunity to cash the check or present it to the bank for payment, Lawrence took possession of the car from Sullivan.

Upon finding that the car had been taken, Sullivan notified Graham that he was canceling the transaction. As a result, Graham repaid the $500.00 to Sullivan and did not attempt to cash the $4,000.00 check.

It is clear that ownership of the car passed to Sullivan at the time payment was accepted and the car was delivered. This payment, however, was made by check and ". . . payment by check is conditional and is defeated as between the parties by dishonor of the check on due presentment." UCC, § 2-511 (3). *See Anderson v. Gill*, 79 Md. 312, 318, 29 A. 527, 529 (1894).

Although the instant check was never presented to the bank for payment, Sullivan, in effect, dishonored the check and countermanded payment when he notified Graham he was canceling the transaction. UCC, § 3-511, provides, in part:

> "(2) Presentment or notice . . . as the case may be, is entirely excused when
>
> * * *
>
> (b) Such party has himself dishonored the instrument or has countermanded payment or otherwise has no reason to expect or right to require that the instrument be accepted or paid; . . ."

*Suit and Wells Equip. Co. v. Citizens Nat'l Bank*, 263 Md. 133, 139, 282 A. 2d 109, 112 (1971).

Sullivan's right to retain or dispose of the Cadillac was conditional upon his making the payment due. UCC, § 2-507

(2). Consequently, when his check was dishonored, Graham had a right to reclaim the vehicle. *See Guy Martin Buick v. Colorado Springs Nat'l Bank*, 519 P. 2d 354, 359 (Col. 1974). As between the seller and buyer, the seller is entitled to reassert dominion over the goods if the buyer has acquired them by giving a check which he later dishonors. J. White and R. Summers, *The Uniform Commercial Code*, Sec. 3-6 (1972).

Since Graham was not the owner of the automobile at the time it was taken, the question arises as to whether Graham had a right to bring an action in trover against Lawrence. Although Graham did not have actual possession or the right to immediate possession of the automobile, when it was seized, it is clear he had the right to immediate possession at the time Sullivan rescinded the sale. Therefore, as to Graham, this was the point in time when the conversion of the automobile occurred and his right to bring an action in trover commenced.

> "Conversion, in the sense of the law of trover, consists either in the appropriation of the property of another or in its destruction, or in exercising dominion over it in defiance of the owner's rights or in withholding the possession from him under an adverse claim, ... A forcible dispossession of personal property is not essential to constitute a conversion." *Poe's Pleading and Practice, supra,* § 206.

In *Saunders v. Mullinix*, 195 Md. 235, 240, 72 A. 2d 720, 722 (1950), the Court of Appeals said:

> "But the gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled. Nor need there exist a forcible dispossession of property to constitute an act of the defendant a conversion."

In *Kirby v. Porter*, 144 Md. 261, 266, 125 A. 41, 43 (1923), the Court quoted, with approval, from 1 Poe § 522:

"In order, therefore, to give a plaintiff a right of action in trover, it is not necessary that he should be able to show an acquisition of the property by the defendant — for any wrongful interference with the owner's possession or right of possession is, in law, either a conversion itself, or evidence from which a previous or continuing conversion may be implied."

Of like import, see *Swartz v. Gottlieb-Bauernschmidt-Straus Brewing Co.*, 109 Md. 393, 401, 71 A. 854, 857 (1909).

Under the circumstances here, we conclude that Graham, who had a right of ownership and a right to immediate possession of the vehicle, after the sale of the vehicle was aborted by dishonor of Sullivan's check, properly pursued his rights by maintaining an action in trover.

II

Lawrence argues that the Court erred in submitting the question of punitive damages to the jury. We agree.

As a general rule, punitive damages may be awarded where there is an element of fraud, or malice, or evil intent, or oppression entering into and forming part of the wrongful act. *Food Fair Stores, Inc. v. Hevey*, 275 Md. 50, 53, 54, 338 A. 2d 43, 45 (1975); *P. W. & B. Railroad Co. v. Hoeflich*, 62 Md. 300, 307, 50 Am. R. 223, 224 (1884).

A more stringent rule applies, however, where the tort arises out of a contractual relationship. In such a case, punitive damages are recoverable only upon a showing of actual malice. *H & R Block, Inc. v. Testerman*, 275 Md. 36, 44, 338 A. 2d 48, 53 (1975).

An examination of the record here reveals that Lawrence, in settlement of the real estate transaction, overpaid Graham; that Graham gave Lawrence three post-dated checks in payment of this debt, but deposited no funds to cover payment. The record further reveals that although Graham was the legal owner of the Cadillac, the title of the vehicle remained in the name of Lawrence. Additionally, before Lawrence seized the vehicle, he contacted the county

and state police and the State's Attorney's Office. In fact, when Lawrence removed the car he was accompanied by a police officer.

In *Food Fair Stores, Inc. v. Hevey, supra,* at page 56 the Court of Appeals observed:

> "It has long been recognized in Maryland that where an act, though wrongful in itself, is committed in the honest assertion of a supposed right or in the discharge of duty, or without any evil or bad intention, there is no ground on which punitive damages can be awarded." 338 A. 2d at 47.

Under the circumstances here, Lawrence seized the Cadillac under an honest but mistaken assertion of right. Therefore, punitive damages should not have been awarded under any theory since malice was totally lacking in either form, actual or implied. *Siegman v. Equitable Trust Co.,* 267 Md. 309, 316, 297 A. 2d 758, 762 (1972).

Because we have concluded that the question of punitive damages should not have been submitted to the jury, it is not necessary to consider the other issue raised by Lawrence.

## III

Graham, in his cross appeal, argues that the trial court erred in submitting the issue of recoupment to the jury. The thrust of his argument is that since the amount of recoupment sought by Lawrence exceeded the amount of the relief he (Graham) sought, Lawrence's claim had to be specially pleaded, and could not be proved under the general issue plea. In *District Agency Co. v. Suburban,* 224 Md. 364, 370, 167 A. 2d 874, 877 (1961), the Court of Appeals held, in effect, that a claim arising out of an independent transaction or seeking relief in excess of the amount sought by the plaintiff, must be specially pleaded. Whereas, a claim arising out of the same transaction may be proved under the general issue plea. *Accord Eisenberg v. Air Cond., Inc.,* 225 Md. 324, 337, 170 A. 2d 743, 748-9 (1961).

Here, the transaction on which Lawrence relied for recoupment arose out of the same transaction, which formed the basis for Graham's claim. Moreover, the amount of the recoupment sought by Lawrence, at the trial of the case, did not exceed the amount of the claim sought by Graham. Therefore, recoupment was a proper issue for jury consideration.

> *Judgment awarding compensatory damages affirmed, judgment awarding punitive damages reversed.*
>
> *Costs to be divided equally.*