**MID–ATLANTIC TENNIS COURTS, INCORPORATED**

v.

**CITIZENS BANK AND TRUST COMPANY OF MARYLAND.**

Civ. No. S 86–45.

United States District Court, D. Maryland.

April 3, 1987.

James Mayer, Ellicott City, Md. and Daniel K. Moller, Reston, Va., for plaintiff.

John S. Simcox and William G. Kazer, Jr., Hartman and Crain, Annapolis, Md., for defendant.

SMALKIN, District Judge.

Now pending in this case is the plaintiff's motion for partial summary judgment and *in limine,* which has been responded to by the defendant. No oral hearing is necessary. Local Rule 6, D.Md.

The facts pertinent to this case can be briefly stated. In early 1983, Mid-Atlantic Tennis Courts, a small family-held corporation, decided to expand its business. For this purpose, it hired one Loy Smith (whose whereabouts are presently unknown) as a commission salesman. Smith was authorized to sell tennis court jobs and to deliver the executed contracts and any customer deposits received directly to the business office of Mid-Atlantic in Clifton, Virginia.[1] In early 1984, Smith devised a scheme to defraud Mid-Atlantic. Using customer leads from Mid-Atlantic, Smith entered into eight contracts with potential customers, but did not inform Mid-Atlantic of them. In all cases, he accepted deposit checks from the customers made payable either to

himself only, to Mid-Atlantic only, or to himself and Mid-Atlantic jointly, and in one case, to himself and an apparently fictitious corporation named SMD. In the summer of 1984, Smith opened two checking accounts with defendant Citizens' Bank in his own name, *viz.,* Loy Thompson Smith, into which he deposited 23 checks, drawn by eight different drawers on a number of drawees, including some drawn on the defendant. As to all of these checks, the defendant was the depositary bank, as defined in *Md. Comm. Law Code Ann.* [U.C.C.] § 4–105(a).[2] Eventually, of course, Smith disappeared, and the scheme became known to Mid-Atlantic when the would-be customers became disappointed with the lack of progress on their tennis courts.

In this suit, the plaintiff requests recovery "only for those checks improperly deposited with the endorsement 'for deposit only' or no endorsement" in either one of the two personal checking accounts Smith opened with the defendant. It is undisputed from the deposition of Citizens' Vice President, Mr. Haste, that these checks (the ones that were not endorsed in any fashion with the name Mid-Atlantic) should not have been accepted by defendant for deposit in *anyone's* account other than Mid-Atlantic's. (Haste's Dep. at 21.) Based on this admission, the plaintiff seeks summary judgment for the checks in question.

The defendant's response argues that Fed.R.Civ.P. 56 precludes the grant of summary judgment when there is a genuine dispute of material fact. Such a dispute in this case is said to arise from Smith's statement to an employee of the defendant's security department, on January 27, 1985, that he (Smith) had an agreement with the president of Mid-Atlantic "under which Smith was authorized to collect monies on behalf of Mid-Atlantic, deposit those funds

---

1. There is some dispute of fact as to whether Smith had the authority of Mid-Atlantic to "cash, negotiate, and/or deposit any checks payable to Mid-Atlantic," but that dispute of fact will be discussed hereinafter.

2. The checks both drawn on and deposited in the defendant bank are referred to as "on us" items. For the purpose of this case, though, they are treated the same as checks drawn on other drawees. U.C.C. § 4–105(a).

in his personal account, pay subcontractors out of this account, retain his commission, and remit the balance to Mid-Atlantic."

It is well-settled that a summary judgment movant is entitled to prevail where there is no genuine dispute of material fact, and he has a clear entitlement to judgment in his favor as a matter of law. Fed.R.Civ.P. 56. *See Anderson v. Liberty Lobby, Inc.,* — U.S. —, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) and *Celotex Corporation v. Catrett,* — U.S. —, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rule 56(e) states the necessary qualification for affidavits sufficient to generate a genuine dispute of material fact: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Clearly, the authority *vel non* of Smith is not something as to which defendant's affiant, Davis, had any personal knowledge. The personal knowledge involved is only that of Smith, who is not the affiant. On the assumption that the affiant had personal knowledge of Smith's *statement* as to the scope of his own authority, the next question is whether Smith's statement is "admissible in evidence...." Fed.R.Civ.P. 56(e). Clearly, Smith's statement is hearsay. Fed.R.Evid. 801(c). This statement is not an admission by a party-opponent under Rule 801(d)(2)(D), because it is clear from the defendant's own papers (Memorandum at 2, Davis Affidavit at ¶ 3) that the statement of Smith in question was made *after* the termination of the employment relationship between him and Mid-Atlantic. Furthermore, none of the hearsay exceptions in Fed.R.Evid. 803 or 804 is available to render Smith's statement "admissible in evidence," as that phrase is used in Fed.R. Civ.P. 56(e). In short, the party opposing summary judgment must come up with evidentiary facts, not simply assertions that facts might exist which could be eventually discovered and presented at trial in an admissible fashion, in order to avoid summary judgment. *Celotex Corporation v. Ca-*

*trett.* Thus, there is no genuine dispute of fact for Rule 56 purposes on this record.

Furthermore, even if there were a genuine dispute of fact as to Smith's authority, that fact would have to be material to preclude summary judgment. The defendant has not answered, in its opposition affidavits, the affidavit assertions of Jim Lieberton, President of Mid-Atlantic, to the effect that Smith deposited the checks in his own account and that Mid-Atlantic has not received the proceeds of the checks, to which it was entitled as payee. Thus, it is clear that the plaintiff was the payee and "owner" of the checks in question, and that they have been converted in the common law sense, *viz.*, that Mid-Atlantic, as the true owner, has been deprived of the checks or the proceeds thereof. *See, e.g., Lawrence v. Graham,* 29 Md.App. 422, 427–28, 349 A.2d 271, 274 (1975). The U.C.C., in § 3–419, applies conversion principles to negotiable instruments. *See, C.S. Bowen Co. v. Maryland Nat'l. Bank,* 36 Md.App. 26, 36–37, 373 A.2d 30, 36 (1977).

For commercial law analysis purposes, the form of the various instruments must be examined. The instruments are listed in Exhibit A to plaintiff's motion. Exhibit A is reproduced as an appendix hereto. There are 23 checks listed. Of those, plaintiff seeks recovery for only 13. Of those 13, two were deposited having no endorsement whatever, and the remaining 11 bore "endorsements" that consisted only of the words "for deposit only." The total amount of these 13 items was $72,158.45, which appears to be all the recovery that the plaintiff seeks by this lawsuit.

It is utterly clear that the defendant did not act in conformity with the reasonable commercial standards of banking when it took in items with no endorsement at all or with no endorsement, save the restrictive language "for deposit only," that had been deposited in Smith's personal banking account, when the named payee was solely Mid-Atlantic. This was the case with every item for which the plaintiff now seeks compensation. An officer of the defendant has essentially admitted this lapse of conformity to banking standards, there

is nothing disputing it in defendant's summary judgment opposition, and the legal conclusion is utterly clear. Thus, defendant, as a depositary bank, has conversion liability to plaintiff whether or not any proceeds of the checks remain in its hands. U.C.C. § 3–419(3).

It is axiomatic that an item is converted when it is paid on a forged endorsement, because the payment is made to one who has no good title. U.C.C. § 3–419(1)(c). This is just as true in the case where an endorsement necessary to transfer title is missing, because, without the necessary endorsement, there can be no negotiation of the order paper (such as all this paper was). U.C.C. § 3–202, and the taker is not a holder, U.C.C. § 1–201(20). *People's Nat'l v. Amer. Fid. Fire Ins.*, 39 Md.App. 614, 618–19, 386 A.2d 1254, 1257 (1978). Although a bank is privileged in some circumstances to supply a missing endorsement, the only endorsement that it can supply is that of *its customer*, U.C.C. § 4–205(1), and it is clear that Mid-Atlantic was not defendant's customer, because it had no account with defendant. U.C.C. § 4–104(1)(e). Until the bank supplies the missing endorsement of its customer, usually with a rubber stamp, it is not a holder of the item. *United Overseas Bank v. Veneers, Inc.*, 375 F.Supp. 596, 604–05 (D.Md.1974). In this case, the missing endorsement was not that of defendant's customer, Smith, but that of the payee, Mid-Atlantic, who was not defendant's customer. Thus, the depositary bank never became the holder of the checks because of the absence of any endorsement whatever, a deficiency that it could not remedy by a stamp endorsement. *Id.* Because the depositary bank never became a holder in its own right, and because it took items as to which there was no endorsement whatever, it did not have good title to these items, and, therefore, it converted them when it eventually paid the proceeds over to Smith. U.C.C. § 3–419(1)(c). Although U.C.C. § 3–419(3) usually protects depositary banks which have no proceeds of the items remaining in their hands, *see, e.g., Knesz v. Central Jersey Bank & Trust Co.*, 97 N.J. 1, 477 A.2d 806 (1984), that protection is unavailable where, as here, the depositary bank has not adhered to reasonable commercial banking standards. U.C.C. § 3–419(3).

Also, the question of whether or not Smith had authority to negotiate the checks on behalf of Mid-Atlantic is immaterial, for the reason that they simply never were negotiated to defendant by *any* title endorsement, whether authorized or not. Negotiation of order paper requires the authorized signature of the named payee, U.C.C. § 3–202(1), (2). Obviously, the question of whether the payee's signature was authorized or not arises only where there is a signature in the first place. (As previously stated, the defendant had no authority to supply Mid-Atlantic's endorsement under U.C.C. § 4–205, because Mid-Atlantic was never its customer.)

Thus, the Court concludes that there is no genuine dispute of material fact, that plaintiff is entitled to summary judgment against the defendant for all the items deposited bearing no endorsement or the "endorsement" of "for deposit only." The damages are the face amounts of the items. U.C.C. § 3–419(2).

 As an additional ground for recovery, the defendant is liable to the plaintiff for breach of the restrictive endorsement "for deposit only" on the items so marked, for the reason that the items were never deposited to the account of Mid-Atlantic, which is the only treatment consistent with a "for deposit only" restrictive endorsement made by, or (even purportedly) on behalf of, a named payee. U.C.C. §§ 3–205(c), 3–206(4). *See* White and Summers, *Uniform Commercial Code*, (2d ed. 1980) at 596. Thus, the plaintiff has two U.C.C. theories of recovery available with regard to the items that bore nothing more than the language "for deposit only," *i.e.*, conversion and breach of restriction, but either theory entitles it to summary judgment on these items, and the recovery is the same. *Compare* U.C.C. § 3–419(2) *with* § 4–103(5).

Finally, the plaintiff argues that it is entitled to summary judgment on its claim that if Mid-Atlantic was itself negligent,

defendant's failure to comply with reasonable commercial banking standards would vitiate the effect of plaintiff's "contributory negligence." The plaintiff is correct under Maryland law. *Bank of Southern Maryland v. Robertson's Crab House*, 39 Md.App. 707, 389 A.2d 388 (1978).

In short, the plaintiff is entitled to summary judgment in its favor in the amount of $72,158.45. Because the plaintiff, for some reason not readily apparent to the Court, moved only for partial summary judgment, the Court will not enter an order at this juncture, although the Court sees no other issues in the case that need to be addressed. The parties are each given *10* days from the date hereof to show cause why summary judgment should not be entered on the entire complaint of the plaintiff, thereby closing this case. The defendant is warned, however, that this is *not* an invitation to reargue any of the legal matters discussed hereinabove, but simply to show if there is any additional relief the plaintiff seeks that remains open after this ruling.

## EXHIBIT A

### 1. MAKER/CUSTOMER: VIKING WAY LTD. PARTNERSHIP
BANK DRAWN ON: Shenandoah Federal

| Check No. | Date | Amount | Payee | How Endorsed |
|---|---|---|---|---|
| 360 | 05–32–84 | 3,248.75 | MID–ATLANTIC | For Deposit Only |
| 333 | 05–15–84 | 2,950.00 | L. SMITH, | Loy Smith, SMD, INC. |

### 2. MAKER/CUSTOMER: PROFESSIONAL REALTY AND MANAGEMENT
BANK DRAWN ON: First National Bank of Maryland

| Check No. | Date | Amount | Payee | How Endorsed |
|---|---|---|---|---|
| 1704 | 08–18–84 | 5,500.00 | MID–ATLANTIC | For Deposit Only |
| 1728 | 09–06–84 | 9,625.00 | MID–ATLANTIC | No Endorsement |
| 1763 | 09–18–84 | 7,395.00 | MID–ATLANTIC | For Deposit Only |
| 1762 | 09–18–84 | 9,625.00 | MID–ATLANTIC | Mid-Atlantic by Loy Smith |

### 3. MAKER/CUSTOMER: CONANT
BANK DRAWN ON: Citizens Bank and Trust Company of Maryland

| Check No. | Date | Amount | Payee | How Endorsed |
|---|---|---|---|---|
| 3153 | 10–27–84 | 8,398.25 | MID–ATLANTIC | For Deposit Only |
| 3051 | 08–28–84 | 1,000.00 | MID–ATLANTIC & L. SMITH | Loy Smith |
| 3007 | 07–21–84 | 2,399.50 | MID–ATLANTIC | For Deposit Only |

### 4. MAKER/CUSTOMER: SIDHU
BANK DRAWN ON: United Bank and Trust

| Check No. | Date | Amount | Payee | How Endorsed |
|---|---|---|---|---|
| 3078 | 05–09–84 | 1,849.50 | MID–ATLANTIC | For Deposit Only |
| 3120 | 05–23–84 | 1,196.20 | MID–ATLANTIC | For Deposit Only |
| 3133 | 06–08–84 | 7,398.00 | MID–ATLANTIC & CRAIG BLACKTOP | Mid-Atlantic & Craig by Loy Smith |
| 3339 | 10–18–84 | 1,000.00 | MID–ATLANTIC | For Deposit Only |

### 5. MAKER/CUSTOMER: RUDNICK
BANK DRAWN ON: Merrill Lynch Pierce Fenner & Smith Cash Management Account

| Check No. | Date | Amount | Payee | Endorsed |
|---|---|---|---|---|
| 1294 | 11–15–84 | $2,894.50 | LOY SMITH | LOY SMITH |
| 1221 | 10–11–84 | 5,298.00 | MID–ATLANTIC | For Deposit Only |

| Check No. | Date | Amount | Payee | Endorsed |
|---|---|---|---|---|
| 870 | 07–12–84 | 7,698.25 | LOY SMITH | LOY SMITH |
| 834 | 06–07–84 | 4,400.00 | MID–ATLANTIC | |

6. **MAKER/CUSTOMER: ATHEY**
 BANK DRAWN ON: People's National Bank

| Check No. | Date | Amount | Payee | Endorsed |
|---|---|---|---|---|
| 9375 | 07–02–84 | 3,599.00 | LOY SMITH | LOY SMITH |
| 9454 | 07–20–84 | 6,298.25 | MID–ATLANTIC | For Deposit Only |

7. **MAKER/CUSTOMER: ASSILI**
 BANK DRAWN ON: Citizens Bank and Trust Company of Maryland

| Check No. | Date | Amount | Payee | Endorsed |
|---|---|---|---|---|
| 1439 | 08–15–84 | 9,300.00 | MID–ATLANTIC | No Endorsement |
| 1387 | 06–21–84 | 2,350.00 | MID–ATLANTIC OR L. SMITH | For Deposit Only |
| 1482 | 10–11–84 | 5,000.00 | MID–ATLANTIC | Loy Smith |

8. **MAKER/CUSTOMER: ZOBER**
 BANK DRAWN ON: Merrill Lynch Pierce Fenner & Smith

| Check No. | Date | Amount | Payee | Endorsed |
|---|---|---|---|---|
| 159 | 10–09–84 | 6,250.00 | MID–ATLANTIC | For Deposit Only |

| | |
|---|---|
| Total Amount Deposited: | $114,673.20 |
| Total Deposits Endorsed For Deposit Only or without Endorsement | $ 72,158.45 |