**NORTHWESTERN NATIONAL LIFE
INSURANCE COMPANY**

v.

**LAUREL FEDERAL SAVINGS
BANK, et al.**

**Civil No. S 94–3548.**

United States District Court,
D. Maryland.

Feb. 27, 1996.

Robert W. Biddle, Pamela J. White, J. Kirby Fowler, Ober, Kaler, Grimes & Shriver, Baltimore, MD, for Northwestern Nat. Life Ins. Co.

Ward B. Coe, III, Whiteford, Taylor & Preston, Baltimore, MD, for Laurel Federal.

Philip C. Smith, Christopher F. Davis, Hearne & Bailey, Salisbury, MD, for First Shore Federal.

Robert Paul Muller, Salisbury, MD, pro se.

## MEMORANDUM OPINION AND ORDER

SMALKIN, District Judge.

This case is before the Court on the motion of defendants First Shore Federal Savings and Loan Association (First Shore) and Laurel Federal Savings Bank (Laurel Federal) for summary judgment on the plaintiff's conversion claims against them under *Md. Comm. Law Code Ann.* (U.C.C.) § 3–419 (1992), and the plaintiff's cross-motion for summary judgment. The motions have been fully briefed. No oral hearing is needed. Local Rule 105.6, D. Md.

The underlying facts are not in dispute.

Robert Muller was an insurance agent operating on the Eastern Shore of Maryland. He was, at the time in question, an agent, under contract, of the plaintiff, Northwestern National Life Insurance Company (Northwestern), an insurance company (even though his Maryland insurance license had expired). He was not authorized to deposit Northwestern premium checks into his own bank account, but there was no policy prohibiting him from maintaining bank accounts for the general conduct of his insurance agency business. He maintained such accounts in the name of "N.W.N.L. # 1867," with the defendants.

Mr. Muller "sold" a number of phony, very financially attractive annuity contracts purportedly issued by Northwestern to a number of victims. In fact, Northwestern marketed *no such products* as Muller "sold." Of course, any "premium" checks delivered to Muller never saw their way to Northwestern's coffers. Instead, they were deposited in Muller's two business accounts. For his fraudulent criminal conduct, Mr. Muller is now serving a 22 month federal prison sentence, having been sentenced by the undersigned. NWNL, without admitting any liability on the phony contracts, has made them good and has obtained releases from the defrauded Muller clients.

The present dispute is over a number of checks issued to pay for the phony products. The vast majority were drawn payable to the order of "N.W.N.L. # 1867," or some very close variant thereof, endorsed by Muller with an endorsement "for deposit only/ NWNL # 1867/ [and account number]," and deposited with defendants. Two of the Laurel Federal items were not drawn as aforesaid, but were payable to the order of "Northwestern National Life Insurance Company" and "Northwestern National Life Casualty Company." The accounts into which all items were deposited with the defendants were in the name of "NWNL # 1867," had been opened by Muller, and had Muller named as the authorized drawer.

Plaintiff now seeks recovery against the depositary banks on the ground that they converted all the items by taking them, presenting them, and crediting the proceeds to Muller's business account with a forged payee's endorsement, U.C.C. § 3–419(1)(c). Of course, this theory assumes that plaintiff was the payee, about which more will be said *post.* Such taking is a "payment" on the item within the meaning of § 3–419. In such

a case, a depositary bank is not liable beyond the amount of any proceeds remaining in its hands if it has dealt with the item in good faith and in accordance with the commercially reasonable standards applicable to it. U.C.C. § 3–419(3). *See, generally, Mid–Atlantic Tennis Courts, Inc. v. Citizens Bank & Trust Co. of Md.*, 658 F.Supp. 140 (D.Md. 1987).

The first question to be addressed is whether Northwestern is a proper plaintiff in this conversion suit, as to any of the checks, assuming that it was the payee. The defendants argue that Northwestern never had sufficient possession of the instruments to entitle it to bring an action for conversion. At common law, of course, conversion is considered an actionable interference with a plaintiff's possessory rights.

■ The question of who is a proper plaintiff under U.C.C. § 3–419(1)(c) has received much attention, with some cases holding that a § 3–419 plaintiff must have had possession of the instrument by delivery before its conversion, and other cases holding the opposite. *See generally*, White & Summers, *Uniform Commercial Code*, § 15–4 (4th ed. 1995). The Maryland U.C.C. is silent on the point. The question is expressly addressed in the 1990 revision of Article 3, not yet in force in Maryland. Section 3–420(a) of the 1990 revision denies standing as a conversion plaintiff to a payee who has not received any delivery of the instrument at all. In this case, however, it appears that both under the view expressly taken by § 3–420 of the 1990 U.C.C. and under the better-reasoned case law interpreting present § 3–419, there was sufficient constructive possession of the instrument by NWNL, *assuming* it was the payee, to make it a proper plaintiff in a § 3–419 conversion suit. Revised § 3–420(a)(ii) confers standing on a payee who received delivery "either directly *or through delivery to an agent* ...." (Emphasis added.) Case law interpreting present U.C.C. § 3–419 has also recognized that delivery to an agent is sufficient to confer standing on the principal named as payee. See White & Summers at p. 558. Consequently, for the purposes of determining standing, and assuming for this purpose *only* that the intended payee in all

cases was Northwestern (*but see* discussion *post)*, the Court concludes that Northwestern is a proper party plaintiff under Maryland's current version of U.C.C. § 3–419.

■ The more dispositive question is whether the endorsements placed upon the checks were unauthorized. Liability under § 3–419 arises only when the endorsement is "forged." There is no definition of "forgery" in the U.C.C., but forgery is equated with the concept of "unauthorized" signatures or endorsements, as defined in § 1–201(43). A forged endorsement, in other words, under the law of Maryland and elsewhere, is one that is "unauthorized" within the meaning of § 1–201(43). *Citizens Bank of Maryland v. Maryland Indus. Finishing Co., Inc.*, 338 Md. 448, 458, 659 A.2d 313, 318 (1995). In the case of an agent, an unauthorized endorsement is defined as "one made without actual, implied, *or* apparent authority." U.C.C. § 1–201(43). The drafters' use of the conjunction emphasized in the preceding quotation was not accidental. *See Taylor v. Equitable Trust Co.*, 269 Md. 149, 156, 304 A.2d 838, 842 (1973).

The U.C.C. does not purport to establish substantive principles of agency law. Rather, under U.C.C. § 1–103, the general law of the jurisdiction is looked to for matters involving principal and agent. In pre-U.C.C. case law, the Court of Appeals of Maryland, addressing a factual scenario similar to the present one in relevant part, held that an insurance agent lacked express, implied, or apparent authority to place his company's endorsement on checks made payable *to the company*. *Atlantic Trust Co. v. Subscribers to Automobile Ins. Exchange*, 150 Md. 470, 133 A. 319 (1926).

■ In the present case, there is no dispute that Muller was without actual, implied, or apparent authority to endorse checks in the name of Northwestern National Life Insurance Company. Thus, with regard to the two checks deposited in the Laurel Federal account made payable to "Northwestern National Life Casualty Company" and "Northwestern National Life Insurance Company," the Court having concluded that the plaintiff had a sufficient interest in such checks to

maintain a conversion suit under U.C.C. § 3–419, also concludes that the two items so made payable were converted when paid by Laurel Federal on forged endorsements. U.C.C. § 3–419(1)(c).

■ With regard, though, to the many other items deposited with Laurel Federal, all of which were payable to the order of "NWNL # 1867" or some close variant thereof, and the one First Shore item that was drawn to the order of "NWNL # 1867," the first issue is whether the so-called "imposter payee" rule, U.C.C. § 3–405(1)(a), precludes plaintiff's reliance on any unauthorized endorsement, if Muller falsely represented himself as authorized to sell the phony annuities as products of Northwestern. Section 3–405 validates *anyone's* endorsement in certain cases, including those where the payee has, as an "imposter," induced issuance of the check to his order. The answer is found in Official Comment 2 to § 3–405, which states, in pertinent part:

> "Imposter" refers to impersonation, and does not extend to a false representation that the party is the authorized agent of the payee. The maker or drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement.

Thus, § 3–405(1)(a) is inapplicable to the present case.

Nonetheless, the commentary set forth above provides a clue to solving the real puzzle in this case, which is not confronted head-on in the briefs by any citation of applicable case law. That question is one that concerns the identity of the payee on all items other than the two made payable expressly to Northwestern. It will be remembered that, except for those two items, each one of the over $500,000 in checks involved in this case was payable to "NWNL # 1867" or some variant thereof. It is uncontroverted that Muller's agency number with Northwestern was 1867, and that the items were deposited into his agency's business accounts so named.

The Court starts its analysis of this phase of the case with the observation that the U.C.C. only requires that the payee of a check be "therein specified with reasonable certainty. . . ." U.C.C. § 3–110(1). It appears to the Court that the checks in question were made payable to the order of Muller's insurance, rather than to Northwestern National Life Insurance Company. Although there appears to be no case on point, or any substantive provision of the U.C.C. expressly addressing this issue, support for the Court's conclusion in this regard is found in Comment 2 to U.C.C. § 3–405. In ruling out the possibility that an agent has acted as an imposter by misrepresenting the existence or extent of his agency, the comment looks to the manner in which the check was drawn: "The . . . drawer who takes the precaution of making the instrument payable to the principal is entitled to have his indorsement." In this case, only two of the drawers took that precaution, by drawing their checks to the order of Northwestern National Life Insurance Company or some very close variant thereof. The remainder of the drawers were content to draw their checks to the order of Muller's business, known simply as "NWNL # 1867", which was the owner of the accounts into which the defendants received the items for deposit. In such a situation, it cannot be said that the drawers took "the precaution" of making the instrument payable in such a fashion as to require the authorized endorsement of the Northwestern National Life Insurance Company in order for the instruments to be negotiated. Although Comment 2 speaks from the drawer's point of view, the Court sees no reason to require more or less when the action is one in conversion by a purported principal-payee, such as the present one. The reason is that, in both cases, the question concerns the identification of the payee on the instrument as it stood when issued. See U.C.C. § 3–302(1)(a). The drawer, when naming the payee, must take great care, and, in fact, admits for his own part that the payee as named has the capacity to indorse. U.C.C. § 3–413(3). If, when issued, the payee named in the check was not the named conversion plaintiff, then it would seem under Comment 2 to § 3–405 that the conversion plaintiff would have no more right to endorse the check than the drawer would have to insist on his endorsement, even though the drawer might have been misled

by a purported agent into making the check payable to him or his business, rather than to the principal. In such a case, the remedy is against the agent (or his bond), not against depositary (or even drawee) banks.

■ Thus, with regard to all but the two aforementioned checks deposited with Laurel Federal, the Court concludes that the plaintiff cannot maintain an action for conversion under U.C.C. § 3–419(1)(c), because it was not named as the payee on the items within the meaning of U.C.C. Art. 3. Section 3–117, relied upon by plaintiff, simply does not apply to the "agency items," as they did not identify Muller or his business with "words describing him . . . as agent." Furthermore, the issue in this case is *not* whether the defendants acted properly in the opening of the accounts, which were obviously not in the name of Northwestern as principal, but only in the name of the business, NWNL Agency No. 1867. Rather, the relevant inquiry is as to the handling of the individual checks, as drawn and indorsed. Finally, although plaintiff strenuously urges the Court to disregard any suggestion from defendants that this case be decided *de hors* the U.C.C., it invites the Court to do so, by laying down a red herring trail. That is, it argues that it is the owner of the checks, and, thus, it is immaterial that it is not the named payee (as to all but two of them). This might be true, but it does no more than open the door of § 3–419(1)(c) to their suit. In order to cross the threshold, plaintiff must prove the *corpus* of the depositary bank's offense, *viz.,* paying over forged indorsements. Because it cannot do so with regard to all but two of the items, it cannot succeed as a matter of law. Fed. R.Civ.P. 56(c).

With regard to the two items made payable expressly to Northwestern, the Court next addresses the possible exculpation of Laurel Federal under U.C.C. § 3–419(3).

■ As this Court noted in *Mid–Atlantic Tennis Courts, supra,* and as U.C.C. § 3–419(3) expressly provides, a depositary bank's liability for conversion of an item deposited therein does not exceed the amount of the proceeds left in its hands at the time of suit, which is zero in this case, unless the bank failed to comply with the requirements of good faith and reasonable commercial standards applicable to banks. The Court of Appeals of Maryland has recognized that § 3–419(3) sets up an affirmative defense to be established by the bank. *Citizens v. Maryland Indus. Finishing Co., Inc.,* at 465 n. 11, 659 A.2d at 321 n. 11. The defendant Laurel Federal has not moved for summary judgment on the basis of § 3–419(3) with respect to the two remaining checks, see Laurel Federal's Memorandum in Support of Summary Judgment at p. 19, n. 11, but plaintiff has. There can be no genuine dispute of material fact that, lacking any indication at all of Muller's actual, implied, or apparent authority to place Northwestern's indorsement on items drawn payable to Northwestern itself, Laurel did not follow applicable commercial banking standards. *See, e.g., United Home Life Ins. Co. v. Bellbrook Community Bank,* 50 Ohio App.3d 53, 552 N.E.2d 954, 11 U.C.C.2d 1193 (1988). Indeed, even Laurel's own expert, Mr. Sanner, concluded that the two items in question were not properly endorsed and "should not have been deposited [paid]." Thus, it is clear as a matter of law that plaintiff is entitled to recover in consequence of the two checks totalling $18,566.97 from defendant Laurel for conversion under § 3–419(1), and that the defense of § 3–419(3) is not available as to those checks. Final judgment cannot be granted as to those two items, however, as the question of damages is open. In that this is not an action against a drawee bank, the face amounts of the checks only presumptively establish the plaintiff's damages under § 3–419(2). In that the parties' briefing has, quite understandably, not focused on the question of damages as to those two checks, plaintiffs are hereby given 15 days to brief the question of summary judgment as to damages on the two checks, defendant Laurel is given 10 calendar days thereafter to respond, and plaintiff will have 5 calendar days to reply. Thereafter, the Court will decide if the damages issues need be tried.

Of course, the final judgment eventually to be entered herein will grant judgment in favor of First Shore Federal, with costs.