# JOHN T. STAUB, JR. *v.* JOHN T. STAUB, SR.

[No. 757, September Term, 1976.]

*Decided September 7, 1977.*

The cause was argued before MORTON, DAVIDSON and LISS, JJ.

*Richard M. Winters*, with whom was *Robert D. Osburn, Jr.*, on the brief, for appellant.

*Kenneth J. Mackley*, with whom were *Mackley & Gilbert* on the brief, for appellee.

DAVIDSON, J., delivered the opinion of the Court.

On 5 January 1954, John C. Staub (grandfather) purchased Series H United States Savings Bonds in the amount of $5,000 payable on death to his grandson, John T. Staub, Jr. The grandfather died on 9 March 1954 when his grandson was 17 months old. Thereafter, John T. Staub (father) cashed the interest checks which accrued from the bonds. On 19 May 1955, the father signed the name of John T. Staub, Jr. (son) on a form which requested that the bonds be reissued in the names of John T. Staub, Jr. or John T. Staub. The father continued to cash the interest checks as they accrued. In November, 1959, the father cashed the bonds.

On 6 June 1975, in the Circuit Court for Frederick County, the son, the appellant, filed suit against the father, the appellee, for trespass and conversion. Compensatory and punitive damages were sought. Judge Samuel T. Barrick found that the father had trespassed on the interest checks between 1954 and 1959, and had converted the bonds in 1959. In essence, he awarded the son $200 plus six percent interest for each of the years between 1954 and 1959 as compensation for the interest which had accrued on the bonds. In addition, he awarded him $5,000 plus six percent interest from September, 1959 as compensation for the bonds.

I

The son first contends that the bonds were converted on 19 May 1955 when the father had them reissued in his or his son's name rather than in November, 1959 when the father cashed them. We do not agree.

The question of the time at which a conversion occurs has not previously been considered in Maryland. Conversion has

been defined as a distinct act of ownership or dominion exerted by a person over the personal property of another which either denies the other's right or is inconsistent with it.[1] "[T]he gist of a conversion is not the acquisition of the property by the wrongdoer, but the wrongful deprivation of a person of property to the possession of which he is entitled." [2] Accordingly, a conversion occurs at such time as a person is deprived of property which he is entitled to possess.

Applying this principle to the instant case produces a clear result. Here the record shows that although the father wrongfully added his name to the bonds in 1955, the son was not then deprived of his property. Even after the bonds were reissued, the son as a co-owner could have cashed them at any time. It was not until 1959, when the father cashed the bonds, that the son was deprived of his property. The bonds were converted in 1959 when the father cashed them. The trial court did not err.

## II

The son further contends that as compensatory damages he was entitled not only to an award of $200 plus six percent interest for each of the years between 1954 and 1959, but also to $200 plus six percent interest for each of the years from 1959 to the date of judgment. He maintains that "under a trespass theory of recovery" he is entitled to this additional amount as incidental damages. We do not agree.

There is a distinction between trespass to chattels and conversion and the measure of damages applicable to each. Restatement (Second) of Torts, Topic 2 Conversion (1965) states:

> "The modern law of conversion began with Fouldes v. Willoughby, 8 M. & W. 540, 151 Eng. Rep. 1153 (1841), where the court first drew a distinction between a mere trespass interfering with possession of a chattel, and a conversion, which must involve some exercise of the defendant's

1. Interstate Insurance Co. v. Logan, 205 Md. 583, 588-89, 109 A. 2d 904, 907 (1954); Merchants' National Bank v. Williams, 110 Md. 334, 351-52, 72 A. 1114, 1117 (1909).
2. Saunders v. Mullinix, 195 Md. 235, 240, 72 A. 2d 720, 722 (1950); Lawrence v. Graham, 29 Md. App. 422, 427, 349 A. 2d 271, 274 (1975).

hostile dominion or control over it. From this there has developed the present rule, which regards conversion as an exercise of the defendant's dominion or control over the chattel, as distinguished from a mere interference with the chattel itself, or with the possession of it. Since any interference with the chattel is to some extent an exercise of 'dominion,' the difference between the two becomes almost entirely a matter of degree." [3]

"(2) In determining the seriousness of the interference ... the following factors are important:

(a) the extent and duration of the actor's exercise of dominion or control;

(b) the actor's intent to assert a right in fact inconsistent with the other's right of control;

(c) the actor's good faith;

(d) the extent and duration of the resulting interference with the other's right of control;

(e) the harm done to the chattel;

(f) the inconvenience and expense caused to the other." [4]

"The importance of the distinction between trespass to chattels and conversion ... lies in the measure of damages. In trespass the plaintiff may recover for the diminished value of his chattel because of any damage to it, or for the damage to his interest in its possession or use. Usually, although not necessarily, such damages are less than the full value of the chattel itself. In conversion the measure of damages is the full value of the chattel, at the time and place of the tort. When the defendant satisfies the judgment in the action for conversion, title to the chattel passes to him, so that he is in effect required to buy it at a forced judicial sale. Conversion is therefore

---

3. Restatement (Second) of Torts, § 222A, Comment a (1965).
4. Id. § 222A(2).

properly limited, and has been limited by the courts, to those serious, major, and important interferences with the right to control the chattel which justify requiring the defendant to pay its full value.

"No one factor is always predominant in determining the seriousness of the interference, or the justice of requiring the forced purchase at full value. . . . The question is nearly always one of degree, and no fixed line can be drawn. There is probably no type of conduct with respect to a chattel which is always and under all circumstances sufficiently important to amount to a conversion, since the interference with the right of the plaintiff may in each case be either trivial or serious. Not only the conduct of the defendant, but also its consequences, are to be taken into account. In each case the question to be asked is whether the actor has exercised such dominion and control over the chattel, and has so seriously interfered with the other's right to control it, that in justice he should be required to buy the chattel." [5]

Although different measures of damages are applicable in trespass and conversion, these two forms of action provide alternative remedies for the same wrong. Where there has been a single interference with a chattel, the owner may recover for trespass or for conversion, but not for both.[6]

In Maryland, the measure of damages for trespass to a chattel is the diminished value of the chattel which results from the damage actually sustained from the time of the taking until the return of the goods.[7] The measure of damages for the conversion of a chattel is the market value of the chattel at the time and place of conversion plus interest to the date of judgment.[8] As in other tort actions,

---

5. Id. § 222A, Comments c, d.

6. *See* W. Prosser, *The Law of Torts,* § 15 at 80 (4th ed. 1971).

7. Strasburger v. Barber, 38 Md. 103, 108 (1873).

8. Checkpoint Foreign Car Service, Inc. v. Sweeney, 250 Md. 251, 253, 242 A. 2d 148, 149 (1968); Herzberg v. Adams, 39 Md. 309, 313 (1874).

additional damages adequate to compensate an owner for other injurious consequences which result in a loss greater than the diminished or market value of the chattel at the time of the trespass or conversion may be allowed unless such claimed damages are so speculative as to create a danger of injustice to the opposite party.[9]

Here the record shows that the father cashed the bonds in 1959. The trial court properly found that this was so substantial an exercise of dominion and control over the bonds as to constitute a conversion and properly awarded the market value of the bonds at the time of the conversion plus interest to the date of judgment as damages. There is nothing in the record to indicate that the son suffered any other injurious consequence which resulted in a loss greater than the damages awarded. The trial court did not err in failing to award additional damages.

### III

Finally, the son contends that the trial court erred in refusing to award punitive damages because "[t]he total weight of the evidence produced at the time of trial leads to no other conclusion than the fact that the wrongful acts of the appellee were willful, wrongful, reckless, malicious and fraudulent against the rights of the appellant." Again, we do not agree.

Under proper circumstances, punitive damages may be awarded in conversion and trespass actions. In order to recover punitive damages in such actions, an element of aggravation evidenced by conduct of an · extraordinary nature characterized by a wanton or reckless disregard for the rights of others, sometimes called implied malice or the legal equivalent of actual malice or legal malice must accompany the tortious act.[10] As stated in *McClung-Logan Equipment Co., Inc. v. Thomas*,[11] punitive damages may be

---

**9.** *See* Weishaar v. Canestrale, 241 Md. 676, 684-85, 217 A. 2d 525, 531 (1966); Strasburger v. Barber, 38 Md. at 108.

**10.** *See* Wedeman v. City Chevrolet Co., 278 Md. 524, 530-31, 366 A. 2d 7, 11-12 (1976).

**11.** 266 Md. 136, 148, 172 A. 2d 494, 500 (1961).

awarded "where the act of the defendant is accompanied with fraud, ill will, recklessness, wantonness, oppressiveness, willful disregard of the plaintiff's rights, or other circumstances tending to aggravate the injury. . . ." Proof of actual malice in the sense of "the performance of an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff," [12] is not a prerequisite. [13]

Whether the malice requisite to an award of punitive damages exists is a question of fact. Such malice need not be shown by direct evidence but may be inferred from acts and circumstances. [14] Even where such malice is established, the award of punitive damages lies within the discretion of the trier of fact. [15]

Here there was evidence to show that the father cashed the interest checks and bonds knowing that they belonged to his son. There was also, however, evidence to show that the father cashed the interest checks and bonds in order to preserve financial investments which provided support for his family, including his son. Indeed, he stated that his failure to use the bonds would have caused him to "lose everything" and thus be unable to care for his family. Under these circumstances, the trial court's finding that the father did not act out of evil motives intended to injure his son or with wanton or reckless disregard for his son's rights was not clearly erroneous. Accordingly, punitive damages were properly denied.

*Judgment affirmed.*
*Costs to be paid by appellant.*

---

**12.** H & R Block, Inc. v. Testerman, 275 Md. 36, 43, 338 A. 2d 48, 52 (1975).

**13.** *See* Wedeman, 278 Md. at 530-31, 366 A. 2d at 11-12.

**14.** McClung, 226 Md. at 148, 172 A. 2d at 500. *See* Vancherie v. Siperly, 243 Md. 366, 374, 221 A. 2d 356, 360 (1966).

**15.** *See* Wedeman, 278 Md. at 533, 366 A. 2d at 13.