In re Kermit E. INMAN & Joyce K. Inman, Burger Queen of Hopkinsville, Inc., Kash Restaurants, Inc., Druther's of Hopkinsville, Inc. and Burger Queen of Russellville, Inc., Debtors.

Bankruptcy Nos. 5-85-00239, 5-85-00237, 5-85-00238, 5-85-00240 and 5-85-00387.

United States Bankruptcy Court, W.D. Kentucky.

May 16, 1988.

Logan B. Askew, Hopkinsville, Ky., for debtors.

Michael A. Richardson, Hopkinsville, Ky., Trustee.

William G. Deatherage, Jr., Hopkinsville, Ky., for Sovran Bank/Kentucky.

## MEMORANDUM-OPINION

J. WENDELL ROBERTS, Bankruptcy Judge.

This matter is before the Court upon the debtor's objection to the Amended Proof of Claim of Sovran Bank/Kentucky, Inc. ("Sovran"). The debtor objects to Sovran's assertion of a security interest in checking account deposits totalling $18,190.04. Sovran claims it's entitled to these deposits since they constitute "proceeds" from the sale of inventory in which Sovran allegedly has a continuing security interest.

Sovran also claims a "superpriority" lien for $8,012.35, the amount by which the bank account balances diminished from the time of the bankruptcy filing until Sovran filed its Amended Proof of Claim. Sovran claims that since the debtor used the proceeds, after the filing without Court authorization, it is entitled to be compensated for any loss resulting from such use by the debtor.

The Court, having reviewed the memorandum filed by the parties, concludes for the reasons set forth below that the objection by the debtor should be sustained.

Briefly, the parties involved in this case include four corporate debtors whose businesses were all in the nature of fast food restaurants. Additionally, there are two individual debtors who were majority shareholders in the above-mentioned corporations. On July 24, 1985, all the debtors filed for Chapter 11 relief and their cases were consolidated by order of this Court.

The material facts to the present issue are as follows. On March 8, 1984, Sovran Bank loaned money to the debtors, and in consideration thereof, each corporate debtor executed a promissory note and security agreement, granting Sovran a security interest in, among other things, all inventory and proceeds of the businesses.

When Sovran filed its Amended Proof of Claim on November 19, 1987, the debt owed by the debtors to Sovran had been reduced to $220,961.97. This reduction in debt was primarily due to the fact that, pursuant to an Agreed Order dated July 10, 1986, the equipment, inventory and cash on hand in the cash registers was sold to Druthers's International. The proceeds from the sale went to reduce the debt owed to Sovran, pursuant to the Agreed Order.

Since the majority of the debtors' property had been liquidated, the cases were converted to a Chapter 7 and shortly thereafter, Sovran filed its Amended Proof of Claim.

Sovran's claim to the cash deposits is based upon its assertion that these deposits represent proceeds from the sale of inventory. They also assert a superpriority claim of $8,012.35, representing the loss arising from the unauthorized use of the proceeds.

Sovran's claim to the bank account deposits is grounded on Section 552(b) which provides an exception to the general rule that if a security agreement is entered into before the bankruptcy filing, then after-acquired property obtained by the estate is not subject to the security agreement. The exception to the rule states that if the security agreement covers proceeds, etc. of property owned by the debtor before the filing then the proceeds, etc. continue to be subject to the security interest.

The creditor, Sovran, states that before it is able to qualify for the protection of 552(b), it must "first establish the validity of its security interest pursuant to state law." See also, *Smith v. Dairymen, Inc.,* 790 F.2d 1107, 1111 (4th Cir.1986).

There's no question that the Security Agreement covers "inventory and the proceeds thereof." The real issue is whether the cash in the checking accounts represents proceeds from the sale of inventory.

The debtor, in his objections to Sovran's Proof of Claim, argues that the cash deposits do not represent proceeds from the sale of inventory since revenue generated from the operation of a restaurant is primarily from the sale of services and not inventory as Sovran suggests. As authority for this position, the debtor cites us to the case of *Kentucky Club, Inc. v. Fifth Third Bank,* 590 S.W.2d 686 (1979).

In that case, the issue was whether the Uniform Commercial Code ("UCC") provisions relating to bulk transfers apply to the sales of assets of a restaurant. The Court, in holding that the bulk transfer laws do not apply, cited case law as well as the UCC Comments, as supporting the proposition that restaurants are in the principal business of selling service and not merchandise.

In its brief, creditor, Sovran, counters the debtors argument by asserting that the restaurants involved in this case were actually fast-food restaurants as opposed to full-service restaurants. Sovran argues that people frequent fast-food restaurants to purchase hamburgers, french fries, sodas, etc. and they don't expect, nor do they pay for, "service".

We agree with the creditor that a consumer would hope and expect to receive more personalized service at a full-service restaurant than at a fast-food restaurant. However, the degree of service is not the significant factor for our consideration. Rather, the meritorious fact we should note is that the restaurant industry, in general, is a service-oriented industry. In comparison with food wholesalers and retailers who sell food products in their natural or

packaged state, restaurants expend a great deal of time and energy preparing individual food orders by transforming these natural or packaged foods into menu items. As in any business, the cost of preparing such foods for human consumption is without a doubt passed on to the consumer.

For the above stated reasons, we find that the restaurants involved in this case were primarily engaged in the selling of services and therefore, any revenues generated from the operation of the businesses were not from the sale of inventory.

Accordingly, it is our opinion that the cash deposits on hand do not constitute proceeds from the sale of inventory and therefore, Sovran does not have a validly perfected security interest in the cash deposits.

This Memorandum–Opinion constitutes findings of fact and conclusions of law pursuant to Fed.R.Bankr.Pro. 7052.

An order consistent herewith will be tendered this day.

### ORDER

Pursuant to the attached Memorandum–Opinion,

IT IS ORDERED that the debtor's objection to the Amended Proof of Claim of Sovran Bank/Kentucky, Inc. be and hereby is SUSTAINED.

This is a final and appealable Order, and there is no just cause for delay.