2 F.3d 1042
 62 USLW 2113, Bankr. L. Rep. P 75,413, 21
UCC Rep.Serv.2d 212
 In re John Douglas HASTIE, Debtor.
FEDERAL DEPOSIT INSURANCE CORPORATION, and Acquisition
Management, Inc., successor to the claims of FDIC, Appellant,
v.
John Douglas HASTIE, Appellee.
 No. 92-6034.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 13, 1993.
 
 Kenneth I. Jones, Jr. of Jones, Blaney & Williams, Oklahoma City, OK, for appellant.
 Jared D. Giddens (Bryan J. Wells with him on the brief), of Self, Giddens & Lees, Inc., Oklahoma City, OK, for appellee.
 Before BRORBY, McWILLIAMS, and EBEL, Circuit Judges.
 BRORBY, Circuit Judge.
 
 
 1
 The issue in this case is whether a perfected security interest in registered and certificated common stock continues in cash dividends paid on that stock under the Uniform Commercial Code as enacted in the state of Oklahoma.
 
 
 2
 * Acquisition Management, Inc., a successor in interest of the Federal Deposit Insurance Corporation, acquired a security interest in shares of stock owned by a debtor, Mr. John Hastie. FDIC/Acquisition Management [hereinafter "FDIC"] and Mr. Hastie also entered into a security agreement in favor of FDIC covering dividends paid on the stock.[1] The security interest in the stock was effectively transferred, Okla.Stat.Ann. tit. 12A, Sec. 8-313(1) (West Supp.1993), and perfected, Okla.Stat.Ann. tit. 12A, Sec. 8-321(2) (West Supp.1993), by FDIC taking possession of the certificated and registered securities. The issuer of the stock, however, was not requested to, and did not, register a change of ownership of the stock and Mr. Hastie was at all relevant times the registered owner of the securities. Mr. Hastie subsequently filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code. After the date of the bankruptcy petition the issuer of the stock paid cash dividends to Mr. Hastie. Mr. Hastie as debtor-in-possession reported the dividend income in his monthly operating report and intended to use the cash dividends to fund the plan of reorganization. FDIC asserted a claim against the cash dividends claiming its security interest in the dividends was perfected. The bankruptcy court granted summary judgment in favor of Mr. Hastie, holding FDIC's security interest in the dividends was not perfected. The district court affirmed. FDIC appeals claiming that the cash dividends are proceeds from the disposition of the stock under Okla.Stat.Ann. tit. 12A, Sec. 9-306(1) (West Supp.1993), and its security interest continues in the dividends.
 
 II
 
 3
 We review the granting of Mr. Hastie's motion for summary judgment de novo, applying the same standard as the district court. Abercrombie v. City of Catoosa, 896 F.2d 1228, 1230 (10th Cir.1990). Summary judgment is appropriate where there are no genuine issues of fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).
 
 
 4
 The threshold issue in this case is whether after-acquired property is subject to a pre-petition security interest under bankruptcy law. Mr. Hastie acquired the cash dividends after the date of the bankruptcy petition. Property acquired after the commencement of a bankruptcy proceeding is not subject to the lien of any security agreement entered prior to the bankruptcy petition, 11 U.S.C.A. Sec. 552(a) (West 1993), except that a security agreement covering proceeds of property acquired before commencement covers proceeds acquired after commencement. 11 U.S.C.A. Sec. 552(b) (West 1993).[2] Accordingly, FDIC's claim is based upon the determination that cash dividends are proceeds of the stock and that its security interest in the stock continues in the dividends. In making this argument, FDIC asserts that the definition of proceeds under bankruptcy law is broad. We find it unnecessary to decide whether the definition of proceeds under bankruptcy law is broader than the applicable definition under state law, however, as for FDIC to prevail its security interest must be perfected under state law. We turn now to this dispositive issue.
 
 
 5
 Mr. Hastie was a debtor-in-possession having the powers and duties of a trustee, 11 U.S.C.A. Sec. 1107(a) (West 1993); Zilkha Energy Co. v. Leighton, 920 F.2d 1520, 1523 (10th Cir.1990), including the rights and powers of a hypothetical lien creditor with a judicial lien over property in the estate as of the commencement of bankruptcy proceedings. 11 U.S.C.A. Sec. 544(a)(1) (West 1993); In re Waldvogel, 125 B.R. 13, 14 (Bankr.E.D.Wis.1991). Under Oklahoma law, a lien creditor has priority over an unperfected security interest. Okla.Stat.Ann. tit. 12A, Sec. 9-301(1)(b) (West Supp.1993); see generally, Zilkha Energy, 920 F.2d at 1523; In re D.C.I. Danaco Contractors, Inc., 141 B.R. 7, 12-13 (Bankr.E.D.N.Y.1992). Therefore, since Mr. Hastie was in possession of the cash dividends during the pendency of the bankruptcy proceedings, he prevails over FDIC unless FDIC's security interest in the dividends was perfected. FDIC, of course, contends that its interest was perfected. Its position is that the cash dividend was: (1) paid from the earnings and profits of the issuer of the stock; and (2) a disposition of a portion of the stockholder's equity in the underlying corporation. Therefore, according to FDIC, the cash dividends are proceeds of the stock.
 
 
 6
 Was FDIC's security interest perfected? Whether the cash dividends are proceeds and whether the FDIC has a perfected interest in such proceeds is determined by state law. In re Bumper Sales, Inc., 907 F.2d 1430, 1437 (4th Cir.1990); cf. Butner v. United States, 440 U.S. 48, 55-57, 99 S.Ct. 914, 918-19, 59 L.Ed.2d 136 (1979). Under Oklahoma law, "a security interest ... continues in any identifiable proceeds," Okla.Stat.Ann. tit. 12A, Sec. 9-306(2) (West Supp.1993), and "proceeds" are defined as "whatever is received upon the sale, exchange, collection or other disposition of the collateral or proceeds." Okla.Stat.Ann. tit. 12A, Sec. 9-306(1) (West Supp.1993). With respect to this definition, the term "sale" may be defined generally as "[a] revenue transaction where goods or services are delivered to a customer in return for cash or a contractual obligation to pay. [The] [t]erm comprehends [a] transfer of property from one party to another for valuable recompense." Blacks Law Dictionary, 5th ed. at 1200 (1979). Similarly, the term "exchange" may be defined as "[the] [a]ct of giving or taking one thing for another," id. at 505, and the term "collect" in the context of a debt or claim may be defined as "payment or liquidation of it," id. at 238. Lastly, the phrase "other disposition" may be defined generally as the "[a]ct of disposing; [or] transferring to the care or possession of another; [or] [t]he parting with, alienation of, or giving up [of] property." Id. at 423. Accordingly, each of the foregoing events describes an event whereby one asset is disposed of and another is acquired as its substitute.[3] A survey of Oklahoma law and that of other jurisdictions reveals no case in which the status of ordinary cash dividends as proceeds of the underlying common stock is squarely addressed. Nevertheless, the foregoing definitions are consistent with the conventional usage of such terms. See, e.g., General Elec. Capitol Corp. v. Deere Credit Servs., Inc., 799 F.Supp. 832, 836 (S.D.Ohio 1992) (chattel paper generated by sale of inventory identifiable proceeds of sale of inventory); In re Cleary Bros. Constr. Co., 9 B.R. 40, 41 (Bankr.S.D.Fla.1980) (although secured party had perfected lien against equipment it did not have perfected interest in the lease of equipment, so proceeds referred only to sale of the equipment but not to rents from the lease of the collateral); In re Collated Products Corp., 121 B.R. 195, 202-05 (Bankr.D.Del.1990) (payments from accounts receivable are proceeds).
 
 
 7
 Based on the recited definitions, FDIC's position is contrary to the language of the statute, and therefore we believe Oklahoma courts would find FDIC's security interest in the cash dividends not perfected. The receipt of cash dividends by a registered owner of certificated securities bears no resemblance to the events specified in the definition of proceeds or to an act of disposition generally. Common stock represents an ownership interest in the issuing corporation. See Kerrigan v. American Orthodontics Corp., 960 F.2d 43, 46 (7th Cir.1992). Under Oklahoma law, a cash dividend is a distribution of the issuing corporation's capital surplus or retained earnings. Okla.Stat.Ann. tit. 18, Sec. 1049 (West 1986). Thus, although the cash dividend distributes assets of the corporation, it does not alter the ownership interest represented by the stock. The cash dividend, therefore, is not a disposition of the stock. Normally, stock is not disposed of, sold, or exchanged in any way unless a change in the ownership interest in the issuing corporation is thereby effected. We need not decide if a different rule would be appropriate for a liquidating dividend as the issue is not presented. See Aycock v. Texas Commerce Bank, N.A., 127 B.R. 17, 18-19 (Bankr.S.D.Tex.1991) (liquidating dividends considered proceeds of stock). We note only that in such situations an exchange of stock is frequently required. Nor do we view ordinary cash dividends as something akin to a "recovery" for damage to the underlying stock. See generally McGonigle v. Combs, 968 F.2d 810, 828 (9th Cir.) ("[i]f the purpose of [Sec. 9-306] is to be served, however, the security-holder must be protected against diminutions in the value of the security that arise not only from sale, but also from other events or transactions that damage the security"), cert. dism'd, --- U.S. ----, 113 S.Ct. 399, 121 L.Ed.2d 325 (1992). The impact of cash dividends on the value of common stock and on the equity of the stockholder therein is a factual matter of a kind and complexity outside the scope of this litigation. We are aware that under certain conditions so-called "ordinary cash dividends" under Oklahoma law might be paid out to a point at or near the point of insolvency for the issuing corporation. We take some, albeit small, comfort in the fact that this is not the ordinary situation. The fact is that Article 8 inadequately addressed the creation and perfection of security interests in securities and their proceeds. Proposals have been circulated which highlight and suggest solutions to this situation, see, e.g., Interim Report of the Advisory Committee on Settlement of Market Transactions, 1991 A.B.A. Sec. Business Law (proposal to allow for the creation and perfection of security interests in securities accounts including cash), but until the matter is appropriately clarified this court should adopt a workable rule that is permissible within the terms of the U.C.C. as enacted in the State of Oklahoma. In our judgment, the Byzantine factual inquiry that would attend a proceeds rule based upon whether the cash dividends did or did not diminish the value of the stockholder's equity in the stock would not be justified in expense or helpfulness given that as a matter of practice there exist other conventions for obtaining a perfected security interest in cash dividends. Accordingly, the holding of this case is that ordinary cash dividends out of capital surplus and earned income are not proceeds of the common stock as the distribution of the dividend is not a disposition of the stock.
 
 
 8
 We also find support for our reading of the proceeds section in other sections of the Code and the Official Commentary to the Uniform Commercial Code. The relevant texts provide as follows: (1) the creation and perfection of security interests in securities is governed by Okla.Stat.Ann. tit. 12A, Sec. 8-321 (West Supp.1993), which provides in relevant part that "[a] security interest in a security is subject to the provisions of Article 9"; (2) Official Comment (3), U.C.C. Sec. 8-321 (1991) explains that:
 
 
 9
 a security interest in securities [is] subject to the provisions of Article 9 except those provisions dealing with the creation and perfection of security interests.... Thus, in the absence of agreement to the contrary, the secured party ... would have the duty to remit dividends he received to the debtor or to apply them in reduction of the obligation under Section 9-207(2)(c);
 
 
 10
 and (3) U.C.C.Okla.Stat.Ann. tit. 12A, Sec. 9-207(2)(c) (West 1963) provides:
 
 
 11
 Unless otherwise agreed, when collateral is in the secured party's possession
 
 
 12
 ....
 
 
 13
 (c) the secured party may hold as additional security any increase or profits (except money) received from the collateral, but money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation.
 
 
 14
 The foregoing support the decision reached in this appeal because it would be inconsistent with U.C.C. Sec. 8-321 (Okla.Stat.Ann. tit. 12A, Sec. 8-321) and U.C.C. Sec. 9-207(2)(c) (Okla.Stat.Ann. tit. 12A, Sec. 9-207(2)(c)) to treat cash dividends as proceeds of common stock. As previously quoted in full, the Official Comment to Sec. 8-321 refers to cash dividends as money received under Sec. 9-207(2)(c). Section Sec. 9-207(2)(c), in turn, provides that a creditor may take as "additional security any increase or profits," but in the case of money so received (i.e., as increase or profits) the money must be remitted to the debtor or applied in reduction of the secured obligation. Accordingly, the commentary to U.C.C. Sec. 8-321 refers to cash dividends as income and profits, not as proceeds from the disposition of the stock. It would be inconsistent to treat cash dividends as proceeds of the stock in which the security interest in the stock continued, and yet at the same time classify the cash dividends as increase and profits, and require that they be remitted to the debtor or applied to the secured obligation. Moreover, if the cash dividends are proceeds, it would be either redundant or nonsensical to refer to them as "additional security" as the proceeds rule pertains to the disposition and continuation of the original collateral.
 
 
 15
 FDIC's other contentions similarly lack merit. FDIC claims that if a secured creditor is required to obtain possession of the cash dividends to perfect its interest, then 11 U.S.C.A. Sec. 363(c)(2) (West 1993) would be rendered meaningless. That section requires a trustee (or debtor-in-possession) to segregate and account for, and to restrict the use or sale of, any cash collateral in his possession. This argument is without merit, however, because 11 U.S.C.A. Sec. 363(a) (West 1993) requires reference to 11 U.S.C.A. Sec. 552(b) (West 1993) and the proceeds rule discussed above. As we have decided that FDIC's perfected security interest in the stock did not extend to cash dividends, either at the commencement of the proceedings in bankruptcy or thereafter, the cash dividends, when declared and paid by the issuer and received by Mr. Hastie, were not FDIC's cash collateral.
 
 
 16
 Likewise, this decision does not deprive FDIC of an opportunity to perfect an interest in dividends. An interest in dividends may be perfected by registering a change of ownership in the stock and securing possession of the dividends.[4] See Okla.Stat.Ann. tit. 12A, Sec. 8-207(1) (West Supp.1993) (issuer entitled to treat registered owner as person entitled to receive dividends); Okla.Stat.Ann. tit. 12A, Sec. 9-304(1) (West Supp.1993) (security interest in cash perfected by possession). The FDIC also claims it did not know the dividends were distributed to Mr. Hastie. This argument, even if relevant, is without foundation in the record as Mr. Hastie properly recorded dividend payments in his monthly operating reports.
 
 
 17
 The decision of the district court is AFFIRMED.
 
 
 
 [1]
 The security agreement provided:
 [T]he Debtor hereby sells, assigns, transfers and conveys unto the Secured Party and grants to the Secured Party a Security interest in and to all of the Debtor's interest and property rights, ... including, without limitation, all moneys and claims for moneys due and to become due to the Debtor under all dividends, distributions, accounts, contract rights, voting rights and general intangibles relating to and/or due from [the issuers]....
 ....
 ... The Secured Party will have the right to receive from [the issuers] the share of dividends, profits, return of contributions and other distributions to which the Debtor would be entitled.
 
 
 [2]
 11 U.S.C.A. Sec. 552(b):
 Except as provided in sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law, except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise.
 
 
 [3]
 The parties make no argument with respect to Okla.Stat.Ann. tit. 12A, Sec. 9-306(4) (West Supp.1993), so we offer no opinion on the effect of this section on this appeal. See generally, In re Bumper Sales, 907 F.2d at 1437-38. Section 9-306(4) provides that:
 In the event of insolvency proceedings instituted by or against a debtor, a secured party with a perfected security interest in proceeds has a perfected security interest only in the following proceeds:
 ....
 (b) identifiable cash proceeds in the form of money which is neither commingled with other money nor deposited in a deposit account prior to the insolvency proceedings.
 
 
 [4]
 We express no opinion as to other possible methods of perfecting a security interest in cash dividends of common stock