UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

U.S. BANK TRUST NATIONAL
ASSOCIATION, By and Through
Metropolitan Bank and Trust,
                    *Plaintiff-Appellant,*

                    v.

VENICE MD LLC, a Georgia liability
company; HAGERSTOWN MARYLAND,
LLC, a New Jersey limited liability
company,
                    *Defendants-Appellees,*          No. 02-2340

                    and

NIELSEN ENTERPRISES MD, LLC, a
Maryland limited liability company;
COMPASS CAPITAL CORPORATION;
BARRY C. SMITH; BRIAN K. NIELSEN;
TERESA R. NIELSEN; ANDREW E.
SHAPIRO,
                    *Defendants.*

U.S. Bank Trust National
Association, By and Through
Metropolitan Bank and Trust,
                    *Plaintiff-Appellee,*

                    v.

Venice MD LLC, a Georgia liability
company; Hagerstown Maryland,
LLC, a New Jersey limited liability
company,
                    *Defendants-Appellants,*      No. 02-2368

                    and

Nielsen Enterprises MD, LLC, a
Maryland limited liability company;
Compass Capital Corporation;
Barry C. Smith; Brian K. Nielsen;
Teresa R. Nielsen; Andrew E.
Shapiro,
                    *Defendants.*

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Benson Everett Legg, Chief District Judge.
(CA-99-753-L)

Argued: October 28, 2003

Decided: March 18, 2004

Before WILKINSON, MICHAEL, and DUNCAN, Circuit Judges.

Affirmed in part and vacated and remanded in part by unpublished
per curiam opinion.

**COUNSEL**

**ARGUED:** Lawrence Jay Gebhardt, GEBHARDT & SMITH, L.L.P., Baltimore, Maryland, for Appellant. Charles Kevin Kobbe, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellees. **ON BRIEF:** Dale S. Betterton, GEBHARDT & SMITH, L.L.P., Baltimore, Maryland, for Appellant. Jeffrey D. Herschman, PIPER RUDNICK, L.L.P., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Metropolitan Bank and Trust ("Metropolitan") sued Venice, MD, Venice LLC, and Hagerstown Maryland LLC (collectively, the "Landlord") for taking wrongful possession of the Venice Inn, a hotel and restaurant operation in Hagerstown, Maryland. Metropolitan, which possessed a security interest in the personal property of the Inn, claimed that the Landlord wrongfully took possession of the Inn and disposed of the Inn's personal property for a period of several months. Metropolitan sought damages for conversion equal to the gross revenues of the Inn during the Landlord's possession, along with attorney fees and costs. After a bench trial, the district court awarded damages to Metropolitan for the Landlord's trespass with respect to the Venice Inn personal property, but denied Metropolitan the value of the gross revenues of the Inn during the Landlord's possession. It also denied Metropolitan an award of attorney fees and ruled that each side should bear its own costs. Metropolitan appeals the denial of gross revenues, attorney fees, and costs. We affirm the denial of gross revenues and attorney fees to Metropolitan, but we remand for further consideration of the costs issue. The Landlord cross-appeals, arguing that the district court applied the incorrect measure of damages for trespass under Maryland law. Because there was no error in the ulti-

mate determination of damages awarded to Metropolitan, we affirm on the cross-appeal.

I.

A complete statement of the facts appears in the district court's opinion issued after the bench trial. *U.S. Bank Trust Nat'l Assoc. v. Nielsen Enter. MD*, 232 F. Supp. 2d 500 (D.Md. 2002). In the interest of brevity, we repeat only the facts that are relevant to the appeal.

This case arose from the purchase and operation of the Venice Inn, a hotel and restaurant complex in Hagerstown, Maryland. Brian K. Nielsen purchased the Venice Inn in April 1988 for $8.5 million. Nielsen thereafter formed Nielsen Enterprises Md. LLC to own and operate the Venice Inn, and he formed Nielsen Enterprises LLC to manage the hotel's liquor license. (Nielsen, Nielsen Enterprises Md. LLC and Nielsen Enterprises LLC will be referred to collectively as "Nielsen" or the "Tenant.") As part of the financing of the purchase, the Landlord advanced $2.5 million for the purchase of the real estate which was then leased to Nielsen pursuant to a 98-year unsubordinated Ground Lease (the "Ground Lease"). Compass Capital Corporation, a mortgage broker, extended a $5.9 million loan to Nielsen that was secured by a lien on the leasehold estate and on the Inn's personal property. Metropolitan purchased the loan and became the leasehold mortgagee, making it the actual lender of the $5.9 million.

In addition to the Ground Lease, the primary agreements relevant to this appeal are the Leasehold Deed of Trust, the Security Agreement, and the Financing Statement. The Leasehold Deed of Trust granted a lien in the leasehold estate under the Ground Lease and prohibited the Tenant from modifying or terminating the Ground Lease without Metropolitan's prior written consent. Section 34.3 of the Ground Lease "assign[ed] to the lender [Metropolitan] all of its right, title and interest as tenant under the Ground Lease." The Security Agreement gave Metropolitan an interest in (among other things) all existing and after acquired inventory, accounts, general intangibles, chattel paper, equipment and fixtures, and the proceeds thereof; the Financing Statement simply perfected this security interest. Sections 17 and 20 of the Security Agreement authorized Metropolitan to take immediate possession of the Inn collateral and collect all

accounts receivable upon default. Metropolitan therefore held a leasehold deed of trust on the Ground Lease and a first priority security interest in all personal property from the Venice Inn.

In December 1998 Nielsen defaulted on its loan payments to Metropolitan. On January 22, 1999, Metropolitan issued a default notice to Nielsen. In February 1999 Nielsen defaulted also on its monthly rental payments to the Landlord, prompting the Landlord to issue a default notice to Nielsen, with a copy to Metropolitan. Under the terms of the Ground Lease, the last day to cure the default in rental payments was March 9, 1999. On March 10 Metropolitan forwarded the cure payment to the Landlord, which was received on March 11. The Landlord rejected the cure payment as untimely, terminated the Ground Lease, took possession, and assumed operation of the Venice Inn. Upon taking possession of the Inn, the Landlord discovered numerous delinquent tax bills and expired licenses and spent more than $70,000 to bring the Inn into compliance. The Landlord operated the Venice Inn through October 1, 1999, when the Landlord, the Tenant, and Metropolitan entered into a partial settlement; the Landlord reinstated the Ground Lease and gave possession of the hotel and personal property to Metropolitan in exchange for payment of back rent, taxes, and insurance premiums.

In its complaint Metropolitan asserted various legal and equitable claims against the Landlord for wrongful possession of the Venice Inn's personal property. Metropolitan sought (among other things) the gross revenues of the Venice Inn for the period of March through October 1999, fair rental value of the furniture and other equipment over the period of the Landlord's possession, and damages for breach of quiet enjoyment. The district court determined that Metropolitan's cure payment on March 11 was timely and that the Landlord's possession of the Inn was wrongful. Maryland recognizes the statutory right to redemption, which allows a tenant to cure a rental payment default at any time prior to the enforcement of an eviction order. Md. Code Ann., Real Prop. § 8-401(e) (1996). According to the district court, because the Leasehold Deed of Trust assigned to Metropolitan all the rights that Nielsen held under the Ground Lease, Metropolitan had the right of redemption, which it exercised on March 11. Consequently, the district court determined that the Landlord breached the covenant of quiet enjoyment and various other provisions of the Ground Lease

and that the Landlord's possession of Metropolitan's collateral was a trespass. The district court awarded Metropolitan the fair rental value of its collateral during the Landlord's possession. It denied Metropolitan's claim to the gross revenues of the Inn, its equitable claims, and its request for attorney fees. Finally, the court directed that each side bear its own costs. Metropolitan appeals, and the Landlord cross-appeals.

## II.

### A.

Metropolitan first challenges the district court's failure to award it the Inn's gross revenues from March 10, 1999, to September 30, 1999, which total $1,167,288. As Metropolitan notes, the Security Agreement gives it, as the lender, a security interest in the following property: all inventory, accounts, general intangibles, chattel paper, equipment and fixtures, either presently owned or later acquired, along with proceeds thereof. Security Agreement, ¶¶ 1(A)-(E). All of these items, along with their proceeds, were Metropolitan's collateral for the loan. In the event that Nielsen defaulted on its payments, Metropolitan had the right to demand its collateral and had all of "the rights and remedies of a secured party under the Maryland Uniform Commercial Code." Security Agreement, ¶ 20. Because the district court determined that the Landlord was in wrongful possession of the Inn, Metropolitan argues that the Landlord also wrongfully disposed of its collateral in the course of the Landlord's operation of the Inn.

Under Maryland's version of the Uniform Commercial Code (the "U.C.C."), whenever there is a sale, lease, exchange, or other disposition of collateral, the creditor's security interest continues in the collateral's identifiable proceeds. Md. Code Ann., Com. Law § 9-315(a) (2002); U.C.C. § 9-306 (2002). Thus, because Metropolitan possessed a security interest in the inventory, accounts, general intangibles, equipment and fixtures, along with proceeds thereof, it contends that "[w]hen the Landlord collected a receivable . . . or sold inventory, such as the food and liquor on hand . . . and used the money received to generate new receivables or acquire new inventory, Metropolitan's security interest attached to the entirety of all of the new receivables and all of the new inventory, even if the proceeds of the old receiv-

able or inventory constituted only a small portion of the new." Appellant's Reply Br. 16. Metropolitan therefore claims that it is entitled to the identifiable proceeds of the disposition of its collateral, as well as the proceeds of these proceeds. Metropolitan equates these proceeds, in their entirety, with the gross revenues of the Venice Inn during the Landlord's operation.

The district court denied gross revenues to Metropolitan primarily because it determined that the Landlord engaged in a "use" rather than a "disposition" of the collateral and that only disposition entitles a secured creditor to proceeds. *Nielsen*, 232 F. Supp. 2d at 530-31. The court reasoned that "[r]evenues are treated as proceeds only if there is some permanent disposition of the property, more than the mere use of property to provide hospitality to guests." *Id.* at 531 (internal quotation marks omitted). It further noted that "had the Landlord not used the revenues to keep the hotel running, the proceeds would have stopped abruptly." *Id.* We agree with the district court's determination that most of Metropolitan's collateral was used, not disposed of, and we further conclude that even where collateral was disposed of, the Inn's revenues are not identifiable proceeds of that disposition.

The Security Agreement does not claim the Inn's revenues directly as collateral. Metropolitan is therefore entitled to the revenues only if they constitute identifiable proceeds of a disposition of its collateral. *Cf. In re Schaumberg Hotel Owner L.P.*, 1989 WL 359490, *10 (Bankr. N.D. Ill) (concluding that security agreement covered hotel revenues where it specified a security interest in "all rents, income, profits, revenues, royalties, bonuses, rights, accounts, including accounts receivable, contract rights, general intangibles and benefits and guarantees under any and all leases or tenancies"). Although the term "disposition" is to be construed broadly, a "disposition" must, at a minimum, cause a transfer of property. *See* Ronald A. Anderson, Uniform Commercial Code § 9-306 (3d ed. 1999). For instance, cash dividends are not proceeds of common stock because the distribution of a dividend is not a disposition of stock. *In re Hastie*, 2 F.3d 1042 (10th Cir. 1993).

A critical factor in identifying a disposition is whether another asset has been acquired as a substitute for the one purportedly disposed of. *See id.* at 1045. Where, as here, a creditor holds a security

interest in a hotel's personal property, the hotel's revenues are generated mostly from using that property. *See, e.g.*, *In re Green Corp*, 154 B.R. 819, 825 (Bankr. D. Me. 1993) (holding that hotel revenues are not proceeds because they are not generated from the sale of the underlying collateral); *In re Corpus Christie Hotel Partners, Ltd.*, 133 B.R. 850, 855-56 (Bankr. D. Tex. 1991). When the Landlord relinquished possession of the Venice Inn, most of the secured property remained intact; it had not been sold or substituted for other items. Of course, without a permanent disposition of collateral, Metropolitan cannot claim entitlement to proceeds of its collateral.

Metropolitan's contention that there was a disposition of its collateral is more plausibly directed at two items in particular: the food and beverage inventory and the accounts receivable. However, even assuming some inventory and accounts were permanently disposed of, this partial disposition of its collateral would not entitle Metropolitan to the hotel's revenues as proceeds. *Chemical Bank v. Miller Yacht Sales*, 413 A.2d 619 (N. J. Super. 1980) (holding that larger boat, acquired in transaction involving trade-in of smaller boat, was not proceeds of smaller boat). The depletion of the hotel's food and beverage inventory did not generate revenue by direct sale, as would, for example, selling groceries from a store. Hotel and restaurant establishments are service-oriented businesses; customers pay not just for the food itself, but also for the preparation, atmosphere, and service. *See, e.g.*, *In re Inman*, 95 B.R. 479, 480-81 (Bankr. W.D. Ky. 1988) (holding that even revenues generated by a fast food restaurant are not proceeds from the sale of inventory).

We are similarly unpersuaded that the gross revenues are proceeds of the Inn's accounts receivable. Metropolitan is not simply seeking to recover the accounts owed at the time of Nielsen's default; rather, it seeks all of the revenues generated during the Landlord's possession on the theory that all such revenues are proceeds of the earlier accounts. Appellant's Br. 32. It is undisputed that the accounts receivable were reinvested to maintain operation of the Inn and that the continued operation of the Inn generated gross revenue. However, the connection between the accounts receivable at the time of the Landlord's takeover and the gross revenues for the entire seven month period of the Landlord's possession is too diffuse to support the drastic recovery that Metropolitan seeks. The Inn's revenues were gener-

ated not from the disposition of any account or inventory, but from an array of services provided and from use of the hotel's rooms and facilities. *See In re Corpus Christi Hotel Partners, Ltd.*, 133 B.R. at 855; *In re Green*, 154 B.R. 819 (Bankr. D. Me. 1993). Because we agree with other courts that "'proceeds'. . . involve[s] some permanent disposition of the property, more than the mere use of the property to provide hospitality to guests," we conclude that the Inn's gross revenues are not identifiable proceeds of any disposition of Metropolitan's collateral. *In re Corpus Christi Hotel Partners, Ltd.*, 133 B.R. at 855.

In short, Metropolitan could have negotiated and provided for a security interest in the hotel revenues in its security agreement. It did not, so Metropolitan can only recover such revenues if it establishes that there was a permanent disposition of its collateral and that the revenues are identifiable proceeds of that disposition. We conclude that most of Metropolitan's collateral was used, not disposed of, and that whatever disposition of collateral did occur in the course of maintaining the Inn's operations does not entitle Metropolitan to the gross revenues. We therefore agree with the district court's determination on this issue.

B.

Metropolitan next argues that the district court erred by not awarding it attorney fees as the "prevailing party" in a dispute over the Ground Lease. Section 13.15 of the Ground Lease, the provision dealing with fees, states:

> [t]he unsuccessful party in any action or proceeding shall pay for all costs, expenses and reasonable attorney's fees incurred by the prevailing party or its agents or both in enforcing the covenants and agreements of this Lease. The term 'prevailing party' as used herein shall include without limitation a party who obtains legal counsel and brings an action against the other party by reason of the other party's breach or default and obtains substantially the relief sought, whether by compromise, settlement or judgment.

J.A. 273-74.

The district court denied Metropolitan's request for attorney fees because it determined that Metropolitan was not a "party" to the Ground Lease. It reasoned that because Metropolitan did not assume the burdens (including the obligation to pay rent) under the lease, it could not obtain the benefit of the fee provision. The district court further reasoned that because the fee provision could not be enforced against Metropolitan, neither should Metropolitan be able to enforce this provision against the Landlord.

Attorney fees can be awarded under Maryland law only when authorized by statute or contract. *Hess Construction Co. v. Bd. of Educ. of Prince George's County*, 669 A.2d 1352 (Md. 1996); *Reisterstown Plaza Assocs. v. General Nutrition Ctr.*, 597 A.2d 1049, 1054 (Md. Ct. Spec. App. 1991). Where, as here, an award is authorized by a contract, attorney fees may only be awarded to the extent provided by the contract and according to its terms. In ascertaining the meaning of contractual provisions, we must construe the contract in its entirety and give effect to each clause. *Marsh v. Loffler Housing Corp.*, 648 A.2d 1081, 1086 (Ct. Spec. App. Md. 1994).

Metropolitan claims that it was a prevailing party entitled to the benefit of § 13.15 because, as a leasehold mortgagee and assignee of the Ground Lease, it was a party to the Ground Lease. It relies on § 13.2 of the Ground Lease, which provides that the lease "shall be binding upon, apply, and inure to the parties hereto and their respective heirs, executors, administrators, successors, and permitted assigns." Metropolitan then argues that because the Leasehold Deed of Trust assigned the Ground Lease to Metropolitan, it is, as a leasehold mortgagee, a "permitted assign." Finally, Metropolitan points to its ability to avail itself of the debtor's statutory right to redemption, reasoning that because it had some of the rights of the Tenant, it should also have the right to attorney fees under § 13.15 of the Ground Lease.

We conclude that Metropolitan is not entitled to attorney fees both because Metropolitan was not a "permitted assign" as contemplated by § 13.2 and because the term "prevailing party" should be construed as limited to signatories to the contract. Section 9.1 of the Ground Lease, which addresses the conditions of assignment, gives the Tenant the right to assign the lease or sublet the premises provided that

"(i) Landlord is given sixty (60) days prior written notice intent . . . (iii) Tenant remains fully and primarily liable under all of the provisions of the Lease, [and] (iv) the proposed assignee or sublessee shall assume, in a writing acceptable to the Landlord and its counsel, all of the obligations of Tenant hereunder." Although the Tenant did assign Metropolitan its rights in the property in the Purchase Money Leasehold Deed of Trust and Security Agreement in exchange for the $5.9 million loan provided, this was not an assignment in accordance with § 9.1. Metropolitan concedes that it never assumed all of the obligations of the Tenant. Specifically, Metropolitan acknowledges that it never assumed the duty to pay rent. This fact alone casts doubt on whether Metropolitan should even be regarded as a "permitted assign" under § 13.2.

Further, consideration of the other clauses in the Ground Lease suggests that "prevailing party" refers only to signatory parties. For instance, § 13.5, describing the relationship between the parties to the Ground Lease, provides that "[t]he parties hereto shall always be as Landlord and Tenant." Metropolitan never assumed the role of a tenant, and so it should not be construed as a party. Finally, Article XIV describes numerous rights of a leasehold mortgagee, including the rights to cure and perform in order to prevent the termination of the Tenant's rights. § 14.3. No clause, however, mentions the right of a leasehold mortgagee to recover attorney fees. Because the Ground Lease explicitly provides the leasehold mortgagee with some rights but not the right to recover attorney fees, we conclude that "prevailing party" in § 13.15 refers only to the signatory parties to the contract—Nielsen and the Landlord. Therefore, the district court did not err in denying an award of attorney fees to Metropolitan.

## C.

Metropolitan next challenges the district court's determination that each side bear its own costs. Federal Rule of Civil Procedure 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Metropolitan argues that because it received an award of money damages against the Landlord while the Landlord received no award, Metropolitan is the prevailing party and is presumptively entitled to an award of costs. Although Metropolitan

acknowledges that the rule vests the district court with discretion, it points out that the prevailing party is presumptively entitled to costs and that it is reversible error for the district court to deny costs without explanation. We agree.

We have previously recognized a "presumption that costs are to be awarded to the prevailing party." *Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 446 (4th Cir. 1999). The district court has discretion to deny such an award, but in order to overcome the presumption, it must "articulat[e] some good reason" for its denial. *Id.* at 446 (internal quotation marks omitted). In essence, that reason must be that "there would be an element of injustice in a presumptive cost award." *Id.* Among the factors that justify denying an award of costs are "misconduct by the prevailing party," "the losing party's inability to pay," "[the] excessiveness [of the costs] in a particular case, the limited value of the prevailing party's victory, or the closeness and difficulty of the issues decided." *Id.* (internal quotation marks omitted). The district court may have based its decision to deny costs on sufficient reasons; however, it did not articulate those reasons. We have previously held that "district courts may not depart from the 'normal practice' of awarding fees to the prevailing party without first articulating some good reason for doing so." *Oak Hall Cap and Gown Co. v. Old Dominion Freight Line, Inc.*, 899 F.2d 291, 296 (4th Cir. 1990). We therefore vacate that portion of the district court's October 18, 2002, order that denied costs to Metropolitan and remand for reconsideration of that issue. On remand the district court should award costs to Metropolitan or state reasons why costs should be denied.

D.

Finally, we consider the Landlord's cross-appeal of the district court's determination of damages awarded to Metropolitan for the Landlord's trespass. The district court determined that the Landlord had committed a trespass by its wrongful possession of the Inn personal property. The court explained that the "appropriate measure of damages for this trespass [to chattel] is the fair rental value of these items." *Nielsen*, 232 F. Supp. 2d at 531. It then assigned a monthly rental value of $25,000, which, when multiplied by the number of months that the Landlord was in wrongful possession of the Inn, "approaches the fair market sale value" of much of the Inn furniture. *Id.*

at 532. The Landlord argues that the appropriate measure of damages for trespass to chattel is diminution in value. Because the district court found that any diminution in value of the Inn personal property was nominal, the Landlord contends that Metropolitan should have been awarded only nominal damages.

Under Maryland law, "the measure of damages for trespass to a chattel is the diminished value of the chattel which results from the damage actually sustained from the time of the taking until the return of the goods." *Staub v. Staub*, 376 A.2d 1129, 1133 (Ct. Spec. App. Md. 1977). *See also Diamond v. T. Rowe Price Assocs., Inc.*, 852 F. Supp. 372, 410 (D. Md. 1994) (explaining that the "plaintiff cannot recover monetary damages unless deprivation of the property causes a loss"). In contrast, the "measure of damages for the conversion of a chattel is the market value of the chattel at the time and place of conversion plus interest to the date of judgment." *Staub*, 376 A.2d at 1133. However, in both trespass and conversion cases, "additional damages adequate to compensate an owner for other injurious consequences which result in a loss greater than the diminished or market value . . . may be allowed." *Staub*, 376 A.2d at 1133.

The district court was under no obligation to limit its damage award to the diminished value of the chattel as a result of the trespass. Rather, it was authorized to apply an additional measure of damages to compensate Metropolitan for the forced rental of its property. Had the district court applied only a diminution in value measure, the Landlord would have enjoyed a windfall, paying only nominal damages for wrongfully possessing items that would have cost between $20,000 and $62,000 in monthly rental fees. Therefore, as an additional remedial measure, the district court apparently considered the measure of damages for conversion in determining the damage award for trespass. Although the district court should have first used diminution in value as the measure of damages and then, finding that inadequate, should have granted Metropolitan the fair rental value of its property, we find no error in the ultimate result reached. We therefore affirm the district court's damage award to Metropolitan of $25,000 per month.

### III.

For the reasons stated, we affirm the district court's denial of gross revenues and attorney fees to Metropolitan. We also affirm the district

court's determination to award Metropolitan the fair rental value of the Venice Inn personal property. We vacate that portion of the district court's October 18, 2002, order denying costs to Metropolitan and remand for reconsideration of that issue.

*AFFIRMED IN PART AND*
*VACATED AND REMANDED IN PART*